**Richard WEINBERGER, Respondent,**

**and**

**Independent School District No. 622, et al., Defendants,**

**v.**

**MAPLEWOOD REVIEW, et al., Appellants.**

**No. C7-01-2021.**

Court of Appeals of Minnesota.

June 18, 2002.

---

Stephen W. Cooper, Stacey R. Everson, The Cooper Law Firm, Chartered, Minneapolis, for respondent.

Mark R. Anfinson, Minneapolis, for appellant.

Considered and decided by STONEBURNER, Presiding Judge, HARTEN, Judge, and ANDERSON, Judge.

## OPINION

STONEBURNER, Judge.

Appellant Wally Wakefield, a reporter, appeals from the district court's order compelling him to disclose, pursuant to Minn.Stat. § 595.025 (defamation exception to the Free Flow of Information Act), which defendant, if any, is the source of statements in a news article. Because respondent Richard Weinberger has failed to establish that the exception applies, we reverse.

## FACTS

The *Maplewood Review* employed Wally Wakefield as a reporter. Wakefield gathered information for an article authored by co-reporter Jason Tarasek concerning the school district's decision not to retain Weinberger as the head football coach of Tartan High School. The article appeared in the *Maplewood Review* in January 1997 and contained quotations from, and information attributed to, named and unnamed sources.

Weinberger sued the school district and four school district employees (defendants) alleging breach of contract, tortious interference with a business advantage, defamation, tortious interference with a business opportunity, negligence, and intentional and negligent infliction of emotional distress. The complaint provides:

STATEMENT OF FACTS

\* \* \* \* \* \*

25. On or about December 22, 1996 Defendants requested that [Weinberger] resign as head football coach. [Weinberger] refused to resign.

26. Around the same time a series of newspaper articles [1] were published stating false and malicious comments regarding [Weinberger].

27. On information and belief, Defendants provided false and malicious information for the newspaper articles about [Weinberger].

\* \* \* \* \* \*

## COUNT THREE *DEFAMATION*

\* \* \* \* \* \*

52. [Defendants] have published false, malicious and hurtful statements about [Weinberger].

53. Many of Defendants' statements constituted defamation per se because they specifically disparage [Weinberger] about his profession.

54. Defendants' statements were intended to and did have the effect of

---

1. Only the article that appeared in the *Maplewood Review* is involved in this appeal.

harming [Weinberger's] business and personal reputation by placing [Weinberger] in a false light.

55. Plaintiff has been forced to republish the false and hurtful statements and the reason he was terminated to potential employers.

56. As a direct and proximate result of Defendants' false and misleading statements, [Weinberger] has suffered loss of job opportunities, damage to personal and professional reputation, emotional distress, loss of past, present and future income and benefits.

The article is not quoted in, or attached to, the complaint, and the complaint does not set out any specific statements from the article that Weinberger alleges to be defamatory.

In their depositions, three defendants testified that they spoke to a reporter. Defendant Hickey testified that he was the "former coach" quoted in the article as saying:

> [G]ood things happened during [Weinberger's] tenure as Tartan football coach. But this whole situation has put him in somewhat of a desperate situation. * * * There are a lot of people sitting here waiting for the other shoe to drop.

Defendant Klingsporn testified that the following statement could have been interpreted based on what he said:

> According to sources, the coach is known for his temper, inappropriate comments and foul language, which people claim he uses to intimidate players.

Defendant Lipetzky testified that he made only the statements that were attributed to him in the article. Defendants moved for summary judgment on all claims.

Before Weinberger filed his memorandum opposing the motion for summary judgment he served a subpoena duces tecum on Wakefield. The subpoena ordered Wakefield to appear for a deposition and to bring "[a]ny and all documents, including but not limited to notes and recordings, concerning or related to [Weinberger] in your possession and/or in the possession of the Maplewood Review." When informed that Wakefield did not intend to respond, Weinberger moved to compel Wakefield's deposition.

Wakefield [2] opposed enforcement of the subpoena. The district court denied Weinberger's motion to compel. Weinberger brought a second motion to compel Wakefield's deposition. While this motion was pending, Weinberger filed his memorandum opposing defendants' motion for summary judgment. In that memorandum Weinberger alleges that defendants "fail to identify accurately all of the statements in the [article] that are attributable to them." Weinberger says he "will await the Court's ruling with respect to [Weinberger's] Motion to Compel disclosure of the sources" of the remaining statements.

The district court granted partial summary judgment to defendants, dismissing Weinberger's claims for breach of contract and negligence. The district court did not grant summary judgment on Weinberger's defamation claims, stating that affidavits and deposition testimony contain "many statements alleged to have been made by defendants which, if made and if untrue, may be found by the jury to constitute defamation."

Weinberger amended his motion to compel to request that Wakefield be compelled to identify the source of six specific seg-

---

**2.** Lillie Suburban Newspapers, Inc., owner of the *Maplewood Review,* opposed the motion to compel on behalf of Wakefield.

ments from the article. This is the first identification by Weinberger of the specific statements in the article he claims to be defamatory.

In support of his motion to compel disclosure, Weinberger argued that although defendants took responsibility for some of the statements in the article:

> [A]ll stop short of admitting all the statements. Instead, the deponents have testified that they are not sure of what they said, or forgot what they said to the reporters.

Weinberger admitted that he is unable to identify the source of several of the "most damaging statements" in the article but asserted that he has "reasonable cause to believe that these statements were, in fact, made by school district officials."

The district court granted Weinberger's motion to compel Wakefield to identify the source of the six specified segments. The *Maplewood Review* and Wakefield appealed. We reversed and remanded to the district court because the order lacked findings of fact required by the statute and case law. We directed the district court on remand to address and balance the factors set out in *Bauer v. Gannett Co., Inc. (KARE 11)*, 557 N.W.2d 608, 611–12 (Minn.App.1997). *See Weinberger v. Indep. Sch. Dist. No. 622*, No. C5–00–1830, 2001 WL 741313, at *2 (Minn.App. June 22, 2001).

After rehearing, the district court ordered Wakefield to identify by written interrogatory "which defendant, if any, is the original source for each of the following statements" from the article: [3]

a. But now school officials say they've had enough of Weinberger and his

behavior. According to sources, the coach is known for his temper, inappropriate comments and foul language, which people claim he uses to intimidate players.[4]

b. One source, however, pointed to an incident at Park High School in Cottage Grove as "the straw that broke the camel's back."

c. Weinberger reportedly gave a severe tongue-lashing to several of his players at halftime during Tartan's loss, which knocked the team out of the playoffs.

d. "His language has been awful," one person said on the condition of anonymity.

e. "People have talked to him numerous times. Both his superiors and peers."

f. Weinberger's cursing and his habit of berating his players is allegedly not anything new. For a while, after he was reprimanded, he improved his behavior, according to observers. However, several people said Weinberger eventually sunk back into his old habits. The problem continued to linger because players, parents and even coaches were afraid to speak up—fearing that Weinberger would retaliate.

g. "First ... when there is an intimidating situation, kids have a tendency not to say nothing," a source said. "Second, some parents are apprehensive about saying things because it will be held against their son or daughter."

h. In the past few weeks several assistant coaches reportedly gave notice

---

**3.** The district court's order sets out many of the statements as direct quotations. Many of the statements are not, in fact, quotations and are set out here as they appear in the article.

**4.** Klingsporn has taken responsibility for the first statement.

to Tartan officials that they would not return to coach under Weinberger.

i. After Tartan officials repeatedly warned Weinberger to change his behavior, their patience apparently has run out.

j. "We all have to make changes and get better as a person," a source said. "He (Weinberger) can't admit that there is anything wrong."

The district court's analysis of the Bauer factors is contained in the memorandum attached to its order. This appeal followed.

## ISSUES

I. What standard of review applies to a district court's order compelling a newspaper reporter to disclose confidential sources pursuant to Minn.Stat. § 595.025?

II. Has Weinberger made a prima facie showing that the statements alleged to be defamatory are false and made with actual malice?

III. Has Weinberger established, given the nature of this action and the fact that the reporter is not a party, the requisite relevance and need to compel, pursuant to Minn.Stat. § 595.025, disclosure of which defendant, if any, is the confidential source of statements that appeared in a news article?

## ANALYSIS

### I. The Standard of Review

■ The parties dispute what standard of review applies to our review of the district court's order compelling Wakefield to identify which defendant, if any, made certain statements that appeared in the article. A motion to compel discovery is generally committed to the discretion of the district court and the scope of review

is limited to a determination of whether the district court abused its discretion in entering the challenged order. *Shetka v. Kueppers, Kueppers, Von Feldt & Salmen,* 454 N.W.2d 916, 921 (Minn.1990); *Zerilli v. Smith,* 656 F.2d 705, 710 (D.C.Cir.1981) (stating that the standard of review for a denial of a motion to compel non-party media disclosure of sources is abuse of discretion).

But unlike *Zerilli,* the instant case involves statutory construction. We have applied a de novo standard to review denial of a motion to quash a prosecutor's subpoena for a newspaper's published photographs. *State v. Knutson,* 539 N.W.2d 254, 256–58 (Minn.App.1995); *see also Heaslip v. Freeman,* 511 N.W.2d 21, 22 (Minn.App.1994) (framing review of district court determination on reporter's privilege as issue of statutory construction), *review denied* (Minn. Feb. 24, 1994). In addition, this case implicates the First Amendment rights of the media to protect confidential sources. "Construction of * * * constitutional provisions * * * is a question of law, and this court owes no deference to a lower court's conclusions." *In re Conservatorship of Foster,* 547 N.W.2d 81, 84–85 (Minn.1996). Because the construction of a statute and constitutional provisions are involved, we hold that the standard of review applicable to the district court's order to compel a reporter to disclose confidential sources pursuant to Minn.Stat. § 595.025 is de novo.

### II. The Free Flow of Information Act

The Supreme Court has recognized that newsgathering is essential to a free press and deserves some First Amendment protection. *Zerilli,* 656 F.2d at 711 (citing *Branzburg v. Hayes,* 408 U.S. 665, 707, 92 S.Ct. 2646, 2669, 33 L.Ed.2d 626 (1972)). In the civil context, federal circuit courts have ruled that a qualified reporter's privilege under the First Amendment should

be readily available and that a balancing test should be applied. *Zerilli,* 656 F.2d at 712. The protections of a reporter's privilege are the same under the Minnesota and federal constitutions. *State v. Turner,* 550 N.W.2d 622, 628 (Minn.1996).

The Minnesota legislature enacted the Free Flow of Information Act (Act), Minn. Stat. § 595.021–.025 (2000), in 1973, one year after the Supreme Court's decision in *Branzburg,* to provide statutory protection to reporters from compelled disclosure of their sources. *Bauer,* 557 N.W.2d at 610. The purpose of the act is "to insure and perpetuate * * * the confidential relationship between the news media and its sources." Minn.Stat. § 595.022 (2000). To this end, the legislature determined that "the freedom of press requires protection of the confidential relationship between the news gatherer and the source of information" and that this protection should consist of the news media having the benefit of a "substantial privilege" not to reveal sources of information or to disclose unpublished information leading to the identity of sources. *Id.*

> The Act provides in relevant part:
> 595.023 DISCLOSURE PROHIBITED
> [N]o person who is or has been directly engaged in the gathering * * * of information for the purpose of * * * publication to the public shall be required by any court * * * to disclose in any proceeding the person or means from or through which information was obtained, or to disclose any unpublished information procured by the person in the course of work or any of the person's notes, memoranda, recording tapes, film or other reportorial data whether or not it would tend to identify the person or means through which the information was obtained
>
> \*      \*      \*      \*      \*      \*

595.025 DEFAMATION

Subdivision 1. * * * The prohibition of disclosure provided in section 595.023 shall not apply in any defamation action where the person seeking disclosure can demonstrate that the identity of the source will lead to relevant evidence on the issue of actual malice.

Subd. 2 * * * Notwithstanding the provision of subdivision 1, the identity of the source of information shall not be ordered disclosed unless the following conditions are met:

(a) that there is probable cause to believe that the source has information clearly relevant to the issue of defamation;

(b) that the information cannot be obtained by any alternative means or remedy less destructive of first amendment rights.

Minn.Stat. §§ 595.023 & .025 (2000).

### III. The Bauer factors

■ In *Bauer,* we held that before disclosure of information identifying confidential sources can be compelled, courts must weigh five interrelated factors. *Bauer,* 557 N.W.2d at 611–12. Three of the Bauer factors address constitutional considerations: (1) the relevance of the source's identity to the action; (2) the availability of the information from alternative sources; and (3) a compelling interest in the information or source. *Id.* The remaining two factors: (4) the nature of the litigation and (5) the prima facie demonstration that the alleged defamatory statements are false and made with actual malice, provide the structural foundation for the analysis. *Id.* The weight of each of the factors and the order in which they are considered depend on the circumstances of each case. *See Consumer's Union of United States, Inc., v. Am. Med. Ass'n,* 495

F.Supp. 582, 586 (S.D.N.Y.1980) (noting that "resolution of the balance of interests implicated by subpoenas of non-party journalists should be approached on a case-by-case basis, with careful attention to the facts of each case").

In this case we will examine first the prima facie demonstration; second, the nature of the litigation; third, the relevance of the source's identity; fourth, whether Weinberger has a compelling interest in the information required to be disclosed; and fifth, the availability of the information from other sources.

Our analysis is impeded by the failure of the complaint or the summary judgment process to identify which statements in the article are allegedly defamatory. Although the district court ultimately identified specific statements in its order compelling disclosure, the record contains no statement-by-statement analysis of why these are defamatory. A number of the statements do not appear susceptible to a defamatory meaning on their face. But that issue has not been raised in this appeal. We are mindful that this is the second appeal in this matter and will therefore proceed with our analysis with a caution that by doing so we take no position on whether the statements constitute defamation.

### 1. Has Weinberger made a prima facie case that the alleged defamatory statements are false and made with actual malice?

Requiring plaintiff to make a prima facie case that the alleged defamatory statements are false and made with actual malice protects the fundamental principle that there must be a showing of prejudice before the reporter's privilege is placed at risk. *See Cervantes v. Time Inc.,* 464 F.2d 986, 993 n. 10 (8th Cir.1972) (stating that to compel a newsman to breach a confidential relationship merely because a libel suit has been filed would lead to excessive restraint on the scope of legitimate news-gathering activity).

In evaluating this factor, the district court noted its denial of defendants' motion for summary judgment, stating in its memorandum:

> [T]his court has previously ruled that plaintiff has shown sufficient facts that, if believed, would allow a jury to find that the statements were false and made with malicious intent. The statements in question, if made by the declarant with knowledge of their falsity, are such that in and of themselves they constitute evidence of actual malice.

But a review of the record reveals that the district court did not, in denying defendant's motion for summary judgment, evaluate specific statements in the article for falsity or actual malice. The specific statements had not been identified at the time of the summary judgment motion and the issues of whether these statements are false or were made with actual malice have never been briefed, argued, or decided in this lawsuit.

> Weinberger argues that he has
>
> provided numerous sworn statements and deposition excerpts "which established the falsity of Appellants' statements. [Weinberger's] evidence indicates that the Defendants knowingly made false statements about him, with the intent to cause him harm.

Weinberger, however, has directed neither the district court's attention nor this court's attention to specific evidence that shows that any of the specific statements is false or was made with actual malice. The referenced affidavits and deposition excerpts do not mention these statements or the article. We conclude that Weinberger has not demonstrated a prima facie

case that any of the statements is false or was made with actual malice and that this factor weighs against the disclosure ordered.

## 2. What is the nature of the litigation and is the reporter or news organization from which disclosure is sought a party to the litigation?

This litigation includes multiple claims against the school district and individual employees of the district under various legal theories and includes numerous unspecified allegedly defamatory statements by defendants. The disclosure ordered by the district court will have no effect on the non-defamation claims or on the numerous defamation claims that are unrelated to the news article.

Neither the reporter nor the news organization is a party to this litigation. Where the media are parties, courts have found that the balance may be tipped in favor of disclosure:

> When the journalist is a party, and successful assertion of the privilege will effectively shield him from liability, the equities weigh somewhat more heavily in favor of disclosure * * * [T]his will be particularly true in libel cases involving public officials * * * Plaintiffs in those cases must prove both that the allegedly defamatory publication was false, and that it was made with 'actual malice.' Proof of actual malice will frequently depend on knowing the identity of the newspaper's informant, since a plaintiff will have to demonstrate that the informant was unreliable and that the journalist failed to take adequate steps to verify his story. * * * We take care to point out, however, that disclosure should by no means be automatic in libel cases. Where other relevant factors suggest disclosure is inappropriate, the privilege should prevail.

*Mitchell v. Superior Court,* 37 Cal.3d 268, 208 Cal.Rptr. 152, 690 P.2d 625, 632 (1984) (quoting *Zerilli,* 656 F.2d at 714).

The fact that Wakefield is not a party to the litigation, however, does not prevent disclosure. *See Bauer,* 557 N.W.2d at 611 (noting that whether a reporter is a party to the litigation may tip the balance in favor of disclosure when determining whether the privilege applies). Courts in other jurisdictions have recognized that

> if a source acting with actual malice furnishes defamatory material to a publisher with the expectation that the material (either verbatim or in substance) will be published, the source should be liable for the publication.

*Mitchell,* 208 Cal.Rptr. 152, 690 P.2d at 633. Weinberger candidly admitted to the district court that he does not suspect Wakefield or the *Maplewood Review* of falsely attributed statements, but believes that the newspaper published false statements made by school district employees. Weinberger argued to the district court that he needs the testimony of Wakefield to establish actual malice. Weinberger stated in his memorandum supporting his motion to compel Wakefield's deposition:

> In reality, absent a confession of ill will from the defendant itself in a defamation action there is no way to get the information but for the testimony of the reporter himself.

But even if Wakefield testifies that certain defendants were the source of certain statements, he cannot testify to a defendant's intentions in furnishing the information. *See Consumers Union of Untied States, Inc.,* 495 F.Supp. at 588 (declining to compel disclosure as to information received from sources where discovery represented unwarranted burden on publisher as balanced against the need for such material). It is clear that Weinberger seeks disclosure to make Wakefield his witness

against defendants rather than to discover evidence of actual malice.

■ The media's qualified constitutional privilege to protect sources "is rooted in the desire to promote effective newsgathering and to preserve the free flow of public information." *Bauer*, 557 N.W.2d at 610.

> Compelling a reporter to disclose the identity of a confidential source may significantly interfere with the press's ability to gather news. * * * When the media are reporting a matter of public concern the interest in fostering effective newsgathering is particularly strong. The activities of public figures are matters of public concern.

*Id.* (citations omitted).

Compelling disclosure of confidential sources of statements in an article about a public official, for the purpose of making the reporter a witness against sources, has significant potential to interfere with a reporter's ability to gather news. Given the nature of this case, the fact that Wakefield is not, by asserting the privilege, shielding himself from liability and the potential burden to the newsgathering process of using reporters to impeach or testify against their sources, we conclude that this factor weighs against disclosure.

3. **Has the party seeking disclosure of a confidential source demonstrated that the source's identity is clearly relevant to the action?**

Several courts have described the relevance standard as requiring a showing that the information goes to "the heart" of the plaintiff's claim. * * * [W]hen the district court has "probable cause to believe that the source has information clearly relevant to defamation," * * * the "heart of the claim" standard is satisfied.

*Bauer*, 557 N.W.2d at 611 (citations omitted). The district court stated in its analysis of this factor, "[t]hat the identity of these sources is relevant and goes to the heart of [Weinberger's] claims cannot seriously be questioned."

Wakefield, however, has not been ordered to identify the sources of the statements. Here the disclosure compelled may prove not to be relevant at all. If Wakefield confirms the defendants' testimony that none of them is the source of the statements, Weinberger will have gained nothing relevant to his claim against defendants from the disclosure. The possibility of relevance is not the same as demonstrating that the compelled disclosure is clearly relevant to the action. We conclude that this factor does not support disclosure.

4. **Is there a compelling interest in the information or source?**

■ Where evidence of actual malice is available from non-confidential sources or where defendants have sufficient evidence of truth to prevail on a motion for summary judgment, there may be no need to compel disclosure of the identity of relevant confidential sources. *Bauer*, 557 N.W.2d at 612 (citations omitted). Here, although we have rejected his argument with regard to the specific statements at issue, Weinberger argues that he has demonstrated actual malice through nonconfidential sources. Obtaining evidence of actual malice is not the focus of Weinberger's request for disclosure.

We agree with the district court that Weinberger has a compelling interest in knowing if defendants are the declarants. But:

> [W]hen the information relates to matters of great public importance, and when the risk of harm to the source is a substantial one, the court may refuse to

require disclosure even though the plaintiff has no other way of obtaining essential information.

*Id.* (quoting *Mitchell,* 690 P.2d at 634).

In evaluating this factor, the district court said: "the identities of the declarants are, for the most part, already known." But the evidence does not support this finding. Three defendants admitted talking to a reporter. There is no indication that either of two additional school officials who were deposed was asked about being a source of information in the article. There is a possibility that non-parties will be harmed if Wakefield discloses that none of the named defendants is a source of the statements.

The district court rejected Wakefield's claim that forced disclosure in this case will set a precedent that will greatly hamper his ability and the ability of newspapers to gather news. But the legislature has recognized that compelled disclosure of confidential sources is harmful to newsgathering:

> In order to protect the public interest and the free flow of information, the news media should have the benefit of a substantial privilege not to reveal sources of information or to disclose unpublished information. To this end, the freedom of the press requires protection of the confidential relationship between the news gatherer and the source of information. The purpose of sections 595.021 to 595.025 is to insure and perpetuate, consistent with the public interest, the confidential relationship between the news media and [their] sources.

Minn.Stat. § 595.022 (setting out the purpose of the Free Flow of Information Act). And a federal circuit court stated:

> [W]hen striking the balance between the civil litigant's interest in compelled disclosure and the public interest in protecting a newspaper's confidential sources, we will be mindful of the preferred position of the First Amendment and the importance of a vigorous press. * * * Indeed, if the privilege does not prevail in all but the most exceptional cases, its value will be substantially diminished. Unless potential sources are confident that compelled disclosure is unlikely, they will be reluctant to disclose any confidential information to reporters.

*Zerilli,* 656 F.2d at 712.

We have recognized that the public education system and the people responsible for its operation are matters of great public concern and for that reason we have defined public schoolteachers as public officials for the purposes of defamation law. *Elstrom v. Indep. Sch. Dist. No. 270,* 533 N.W.2d 51, 56 (Minn.App.1995), *review denied* (Minn. July 27, 1995). The article qualifies as having great public interest and the public would be harmed by any chilling effect on the free flow of this type of information to the public. Wakefield's affidavit states that potential sources who worked for the school district told him that they would not be willing to provide information if they were going to be identified in the article and that they expressed concern about repercussions and retaliation if Weinberger knew they had provided information.

We conclude that Wakefield's interest in and concern about the effect of required disclosure on the ability of the press to gather information about public officials is at least as great as Weinberger's interest in the disclosure ordered in this case.

**5. What efforts were made by Weinberger to obtain the information from alternative sources?**

The district court noted that not one of the defendants has "owned up to any of

the statements in question or provided information as to the source." The district court correctly concluded that only Wakefield and the declarant know the source of each specified statement.

In the more typical request for disclosure of confidential sources, the purpose of identifying sources is so that they can be examined. *See Cervantes,* 464 F.2d at 994 (stating that a district court must permit a plaintiff to cross-examine sources before reaching the merits of a motion for summary judgment when disclosure of a source will lead to "persuasive evidence on the issue of malice"). Weinberger has already deposed defendants but because Weinberger had not identified specific statements in the article that he claimed to be defamatory at the time he deposed defendants, defendants were not questioned about whether they believed any specific statement in the article was true or untrue, or the basis of such belief. For the most part, they were not even asked whether they were the source of the specified statements. If defendants are the declarants of the statements identified by the district court, Weinberger argues that the only means to get that information is by compelling disclosure by Wakefield. Although this dilemma has been, in part, created by Weinberger himself, we agree with the district court that this factor weighs in Weinberger's favor.

### IV.  Weighing of Bauer factors

Under the unique facts and posture of this case, we conclude that Weinberger's failure to make a prima facie showing that the statements at issue are false or were made with actual malice; failure to demonstrate that the disclosure ordered will clearly lead to relevant evidence of actual malice; and the chilling effect and burden on the media that will result from making a reporter a witness against sources to whom he promised confidentiality are more significant than Weinberger's interest in the disclosure and his inability to obtain the information he seeks from other sources. Weinberger has not demonstrated that he is entitled to the application of Minn.Stat. § 595.025 to compel Wakefield to disclose which, if any, of the named defendants is the source of one or more of the statements specified by the district court.

### DECISION

 In a defamation action brought by a public official, Minn.Stat. § 595.025 does not require a non-party reporter to disclose which defendant, if any, is the source of one or more of the specific statements that appeared in a newspaper article if the primary purpose of disclosure is not relevant to obtaining evidence of actual malice but rather to make the reporter a witness against defendants, and there is no prima facie showing that the statements are false or were made with actual malice.

**Reversed.**