Richard **WEINBERGER**, petitioner,
Appellant,

and

**Independent School District No.
622, et. al., Defendants,**

v.

**MAPLEWOOD REVIEW,
et. al., Respondents.**

No. C7–01–2021.

Supreme Court of Minnesota.

Sept. 11, 2003.

Stephen W. Cooper, Stacey R. Everson, The Cooper Law Firm, Minneapolis, MN, for Appellant.

Mark A. Anfinson, Minneapolis, MN, for Respondent.

John Borger, Eric E. Jorstad, Patricia R. Stembridge, Faegre & Benson, LLP, Minneapolis, MN, for Amicus Curiae on Behalf of Minnesota Society of Professional Journalists.

Lucy A. Dalglish, Arlington, VA, for Amicus Curiae for Reporters Committee for Freedom of the Press; Society of Professional Journalists; The Newspaper Guild–CWA; and The Minnesota Newspaper Guild Typographical Union in Support of Respondents.

## OPINION

PAGE, Justice.

This appeal arises from appellant Richard Weinberger's motion to compel the *Maplewood Review* and two of its reporters, Jason Tarasek and Wally Wakefield,[1] to disclose the identity of certain sources quoted in an article published by the *Maplewood Review* in January of 1997. Weinberger sought the identity of the sources in connection with a lawsuit he brought against Independent School District No. 622, Barbara Hallbrehder, Tim Hickey, Cletus Lipetzky, and Mark Klingsporn (collectively, "the Tartan Defendants") for defamation. In July 2000, Weinberger served Wakefield with a subpoena requesting a deposition and the identities of the sources quoted in the January 1997 article, but Wakefield refused to comply. Weinberger then filed a motion to compel disclosure, which the trial court granted. Wakefield appealed and the

court of appeals reversed and remanded for additional findings.

On remand, the district court granted Weinberger's motion to compel. Wakefield appealed and again the court of appeals reversed, this time concluding that a nonparty newspaper reporter could not be required to disclose the source of allegedly defamatory information published about a public official when "the primary purpose of disclosure is not relevant to obtaining evidence of actual malice but rather to make the reporter a witness against defendants, and there is no prima facie showing that the statements are false or were made with actual malice." *Weinberger v. Maplewood Review*, 648 N.W.2d 249, 260 (Minn. App.2002). We granted Weinberger's petition for further review and now reverse.

Weinberger sued the Tartan Defendants for defamation, alleging that they collaborated to remove him from his position as head football coach at Tartan High School by destroying his reputation through spreading false rumors and publishing false information in the *Maplewood Review*. The January 1997 article at the heart of this appeal discussed Weinberger's unexpected termination as head football coach and contained a number of quotes from alleged "sources" in the school district discussing why Weinberger was terminated. Although there were several quotes directly attributed to Lipetzky, Tartan's principal, the majority of the information in the article was attributed to unnamed sources. Of these statements, Weinberger identified at least 11 statements from the January 27, 1997, article that he contends are untrue and defamato-

---

1. Although *the Maplewood Review* was named as a respondent during the beginning stages of this case, it did not join Wakefield's petition for review of the court of appeals' decision. Similarly, Jason Tarasek has been dismissed as a respondent because he was never properly served. For this reason, only Wakefield is referred to as "respondent."

ry.[2] Although he maintains that Lipetzky, Klingsporn, and Hickey made these allegedly defamatory statements, he does not know which of these individuals, if any, actually made any of the statements in question.

In July 2000, Weinberger served Wakefield with a subpoena requiring that he submit to a deposition and provide all documents concerning or related to Weinberger. When Wakefield refused to comply, Weinberger filed a motion to compel. The district court denied Weinberger's motion because Weinberger had not exhausted all alternative sources for the information sought. After completing depositions of Lipetzky, Klingsporn, Hickey, and Hallbrehder, each of whom failed to identify who made the alleged defamatory statements noted above, Weinberger renewed his motion to compel.[3] The district

**2.** Weinberger identified the following statements taken from the January 27 article as untrue and defamatory:

1. Tartan High School officials have indicated that they do not intend to renew Weinberger's coaching contract this April.
2. But now school officials say they've had enough of Weinberger and his behavior. According to sources, the coach is known for his temper, inappropriate comments and foul language, which people claim he uses to intimidate players.
3. One source, however, pointed to an incident at Park High School in Cottage Grove as "the straw that broke the camel's back."
4. Weinberger reportedly gave a severe tongue-lashing to several of his players at halftime during Tartan's loss, which knocked the team out of the playoffs.
5. "His language has been awful," one person said on the condition of anonymity.
6. "People have talked to him numerous times. Both his superiors and peers."
7. Weinberger's cursing and his habit of berating players is allegedly not anything new. For a while, after he was reprimanded, he improved his behavior, according to observers. However, several people said Weinberger eventually sunk back into his old habits. The problem continued to linger because players, parents and even coaches were afraid to speak up—fearing that Weinberger would retaliate.
8. "First * * * when there is an intimidating situation, kids have a tendency to not say nothing," a source said, "Second, some parents are apprehensive about saying things because it will be held against their son or daughter."
9. In the past few weeks several assistant coaches reportedly gave notice to Tartan officials that they would not return to coach under Weinberger.
10. After Tartan officials repeatedly warned Weinberger to change his behavior, their patience apparently has run out.
11. "We all have to make changes and get better as a person," a source said. "He (Weinberger) can't admit that there is anything wrong."
12. A few weeks ago, after officials told Weinberger they did not intend to renew his coaching contract, he was placed on a five-day suspension from his position as an earth sciences teacher at Tartan. The suspension apparently was intended to allow Weinberger time to cool off after receiving the news.
13. "They didn't think he'd handle being there (at school) very well," a source said. "It wasn't any other thing he did wrong."

The trial court concluded that, with the exception of the first and twelfth statements, the quoted statements were clearly defamatory if untrue and that, as such, if the declarant knew that they were false at the time they were made, a jury would be justified in finding that they were made with actual malice.

**3.** It is important to note that just before Weinberger renewed his motion to compel the Tartan Defendants moved for summary judgment on Weinberger's defamation claim. The district court denied the Tartan Defendant's motion and specifically found that Weinberger had provided sufficient evidence through affidavits and deposition testimony to create a material fact issue as to whether the allegedly defamatory statements constituted defamation of a public official, i.e., were defamatory statements made with actual malice.

In Minnesota, "public official" has been defined as any plaintiff who performs "governmental duties, directly related to the public interest," who holds "a position to influence significantly the resolution of a public

court granted this motion, requiring that Wakefield provide by interrogatory answer the name of the original source of each statement identified by Weinberger as defamatory.

On appeal, the court of appeals reversed and remanded for further fact-finding consistent with *Bauer v. Gannett Co. (KARE 11)*, 557 N.W.2d 608 (Minn.App.1997).[4] On remand, the district court applied *Bauer* and concluded that on the facts of this case disclosure was appropriate and granted Weinberger's motion. In its order, the district court limited the required disclosure to the identification by written interrogatory as to "which defendant, if any, is the original source for each of the following statements."

Again, on appeal, the court of appeals reversed, concluding that Weinberger had: (a) failed to establish a prima facie case that the statements at issue are false or made with actual malice; (b) failed to demonstrate that the disclosure ordered will clearly lead to relevant evidence of actual malice; and (c) failed to demonstrate how his interest in disclosure is more significant than the chilling effect that will result from making a reporter a witness against sources to whom he promised confidentiality.

■■■ Resolution of this case requires us to interpret the defamation exception found in the Minnesota Free Flow of Information Act,[5] Minn.Stat. §§ 525.021 through 525.025.[6] We review the con-

---

issue;" or a "government employee [who has or appears] to the public to have, substantial responsibility for or control over the conduct of government affairs." *Britton v. Koep*, 470 N.W.2d 518, 522 (Minn.1991). The district court determined that Weinberger was a public official for the purposes of this case and the parties have not subsequently contested this determination.

4. *Bauer* involved a defamation action brought by a public official against a reporter and a media organization. 557 N.W.2d at 609. The appeal arose from a discovery order requiring the reporter to disclose the identities of the confidential sources interviewed by the reporter. *Id.* In interpreting the media's "qualified constitutional privilege codified at Minn.Stat. § 595.021–.025," the court of appeals combined the statutory requirements expressed in Minn.Stat. § 595.025 with the requirements used by other courts in jurisdictions without a similar statute codifying the protections authorized for reporters in civil actions. *Id.* at 609–13. Under *Bauer,* whether disclosure was required depends on the scope of the reporter's privilege as defined by the following factors: (a) "the nature of the litigation and whether the reporter or news organization from whom disclosure is sought is a party to the litigation;" (b) "the party seeking disclosure of a confidential source must demonstrate that the source's identity is clearly relevant to the action;" (c) "that 'the information cannot be obtained by any alter-

native means or remedy less destructive of first amendment rights;'" (d) "whether there is a compelling interest in the information or source;" and (e) whether the plaintiff has made a "prima facie showing that the allegedly defamatory statements are false." *Id.* at 611–12 (citations and emphasis omitted). *Bauer* was never appealed to this court.

5. The dissent focuses on the issue of the reporter's privilege against compelled disclosure under the First Amendment. It does so while acknowledging that the United States Supreme Court has not definitively found such a privilege to exist. We do not address that issue because neither party has properly put that issue before the court, and it was not considered by the district court. *See Funchess v. Cecil Newman Corp.*, 632 N.W.2d 666, 673 (Minn.2001).

6. The Act reads in relevant part as follows:

In order to protect the public interest and the free flow of information, the news media should have the benefit of a substantial privilege not to reveal sources of information or to disclose unpublished information. To this end, the freedom of press requires protection of the confidential relationship between the news gatherer and the source of information. The purpose of sections 595.021 to 595.025 is to insure and perpetuate, consistent with the public interest, the

struction of statutes de novo. *See Ryan Contracting, Inc. v. JAG Invs., Inc.,* 634 N.W.2d 176, 181 (Minn.2001) ("Statutory construction is * * * a question of law which we review de novo."). When interpreting a statutory provision, we first look at whether the words of the statute are clear or ambiguous. *Am. Family Ins. Group v. Schroedl,* 616 N.W.2d 273, 277 (Minn.2000). If the words of the statute are clear and free from all ambiguity, we will not ignore the clear meaning "under the pretext of pursuing the spirit." Minn. Stat. § 645.16 (2002). In doing so, we construe the words and phrases of the statute according to their plain and ordinary meaning and only find the language ambiguous when it is subject to more than one reasonable interpretation. *Id.*

The act was designed to "protect the public interest and the free flow of information" by giving the news media "a substantial privilege not to reveal sources of information or to disclose unpublished information." Minn.Stat. § 595.022. This privilege protects any person "who is or has been directly engaged in the gathering, procuring, compiling, editing, or publishing of information for the purpose of transmission, dissemination or publication to the public." Minn.Stat. § 595.023. While recognizing and designing a substantial privilege for the news media, the legislature created two exceptions to that privilege that require disclosure of unnamed sources under certain limited circumstances. The first exception, one not relevant here, is applicable in criminal cases; the second is applicable in "any defamation actions." [7] Minn.Stat. §§ 595.024 (criminal), 595.025 (defamation). The exception found in section

---

confidential relationship between the news media and its sources.

Minn.Stat. § 595.022 (2002).

Except as provided in section 595.024, no person who is or has been directly engaged in the gathering, procuring, compiling, editing, or publishing of information for the purpose of transmission, dissemination or publication to the public shall be required by any court, grand jury, agency, department or branch of the state, or any of its political subdivisions or other public body, or by either house of the legislature or any committee, officer, member, or employee thereof, to disclose in any proceeding the person or means from or through which information was obtained, or to disclose any unpublished information procured by the person in the course of work or any of the person's notes, memoranda, recording tapes, film or other reportorial data whether or not it would tend to identify the person or means through which the information was obtained.

Minn.Stat. § 595.023 (2002).

Subdivision 1. **Disclosure prohibition; applicability.** The prohibition of disclosure provided in section 595.023 shall not apply in any defamation action where the person seeking disclosure can demonstrate that the identity of the source will lead to relevant evidence on the issue of actual malice.

Subd. 2. **Disclosure conditions.** Notwithstanding the provisions of subdivision 1, the identity of the source of information shall not be ordered disclosed unless the following conditions are met:

(a) that there is probable cause to believe that the source has information clearly relevant to the issue of defamation;

(b) that the information cannot be obtained by any alternative means or remedy less destructive of first amendment rights.

Subd. 3. **Determination; appeal.** The court shall make its order on the issue of disclosure after making findings of fact, which order may be appealed to the court of appeals according to the rules of appellate procedure. During the appeal the order is stayed and nondisclosure shall remain in full force and effect.

Minn.Stat. § 595.025 (2002).

7. The dissent suggests that section 595.025 should apply only when a reporter is a party to the defamation action. However, the statutory language clearly and unambiguously states that section 595.025 applies in *"any* defamation action," not merely actions in which a reporter is a defendant. Minn.Stat. § 595.025, subd. 1 (emphasis added).

595.025 requires disclosure when "the person seeking disclosure can demonstrate that the identity of the source will lead to relevant evidence on the issue of actual malice." Minn.Stat. § 595.025, subd. 1. The person seeking disclosure must also show that "there is probable cause to believe that the source has information clearly relevant to the issue of defamation" and that "the information cannot be obtained by any alternative means or remedy less destructive of first amendment rights" before disclosure will be required. Minn. Stat. § 595.025, subd. 2(a) and (b).

▮ In Minnesota, a plaintiff pursuing a defamation claim must prove that the defendant made: (a) a false and defamatory statement about the plaintiff; (b) in unprivileged publication to a third party; (c) that harmed the plaintiff's reputation in the community. *Britton v. Koep,* 470 N.W.2d 518, 520 (Minn.1991). When the plaintiff is a public official and the statement relates to the individual's official conduct, the plaintiff must prove not only that the statement was false, but also that the statement was made with actual malice. *Id.* A statement is made with actual malice when it is made with the "knowledge that it was false or with reckless disregard of whether it was false or not." *New York Times v. Sullivan,* 376 U.S. 254, 279–80, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964); *see also Britton,* 470 N.W.2d at 520. The district court determined that for the purposes of this action Weinberger is a public official and therefore must prove defamation with actual malice to successfully pursue his claim against the Tartan Defendants.

▮ We begin our analysis by addressing whether Weinberger "can demonstrate that the identity of the source will lead to relevant evidence on the issue of actual malice." Minn.Stat. § 595.025, subd. 1. Under the Minnesota Rules of Evidence, relevant evidence is "evidence having *any tendency* to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Minn. R. Evid. 401 (emphasis added); *see, e.g., Boland v. Morrill,* 270 Minn. 86, 98–99, 132 N.W.2d 711, 719 (1965) (stating that "any evidence is relevant which logically tends to prove or disprove a material fact in issue"). To prove actual malice, the plaintiff has to show that the declarants spoke with the knowledge that their statements were false or with reckless disregard as to whether the statements were false or not. *See Sullivan,* 376 U.S. at 279–80, 84 S.Ct. 710; *Britton,* 470 N.W.2d at 520. Therefore, under the language of section 595.025, the defamation exception applies when a plaintiff can demonstrate that the identity of the source will lead to evidence having any tendency to prove or disprove that the defendants spoke with the knowledge that the statements were false or with reckless disregard as to whether the statements were false or not. This does not mean, as the court of appeals required, that the plaintiff has to prove that the declarant indeed spoke with actual malice before the exception can be applied. Rather, under the plain language of the statute, we conclude that the statute requires only that the plaintiff establish that the identity of the source will lead to relevant evidence on the issue of actual malice.

In cases such as the one before us today, in which the plaintiff has alleged that the defendant is the source of the allegedly defamatory statements, relevant evidence constitutes not only evidence on the source's knowledge, but also the source's identity. As noted above, in order to prove that a defendant acted with actual malice, the plaintiff must establish that the defendant made statements that he or she knew were false or acted with reckless

disregard as to whether the statements were true or false. When the identity of the speaker is known and clearly identified, all that the plaintiff needs to establish to prove actual malice is what the defendant knew at the time the statements were made. However, when the identity of the speaker is hidden under the cloak of anonymity because the speaker has published his or her allegedly defamatory statements through a newspaper that has not attributed the statements directly to the speaker, it is self-evident that the identity of the speaker will lead to relevant evidence on the issue of actual malice.

■ Here, Weinberger has alleged that Lipetzky, Klingsporn, and Hickey are the unnamed sources quoted in the January 27 article. The district court has determined that the statements, if false, are defamatory and that, based on the depositions and affidavits submitted by the plaintiff, material issues of fact exist as to whether these statements were made with actual malice. By requiring that Wakefield only disclose the identity of the unnamed sources who are Tartan Defendants, the trial court has ensured that disclosing the unnamed sources' identity will lead to evidence having a tendency to prove or disprove that the declarant spoke with knowledge that the statements were false or with reckless disregard to their truth or falsity. If none of the Tartan Defendants are the source for the allegedly defamatory statements, then Weinberger's claim with respect to these statements ends. Because actual malice is a fact of consequence and because knowing whether any of the named Tartan Defendant's made any of the allegedly defamatory statements will allow Weinberger, through discovery, to obtain evidence that will have a tendency to either prove or disprove actual malice, we conclude that Weinberger has satisfied the requirement for disclosure under section 595.025, subdivision 1.

■ Next, we must determine whether "there is probable cause to believe that [Wakefield's unnamed] source[s] have information clearly relevant to the issue of defamation." Minn.Stat. § 595.025, subd. 2(a). As explained by the Connecticut Supreme Court, in civil cases probable cause constitutes " 'a *bona fide* belief in the existence of the facts essential under the law for the action and such as would warrant a [person] of ordinary caution, prudence and judgment, under the circumstances, in entertaining it.' " *New England Land Co. v. DeMarkey*, 213 Conn. 612, 569 A.2d 1098, 1103 (1990) (quoting *Wall v. Toomey*, 52 Conn. 35, 36 (1884)); *see also* Black's Law Dictionary 1219 (7th ed.1999) (defining "probable cause" as "[a] reasonable ground to suspect that a person has committed or is committing a crime"). Here, the probable cause requirement of section 595.025, subdivision 2(a), is satisfied because the narrowness of the district court's disclosure order insures that the unnamed sources will have information relevant to the defamation claim. As noted above, the order only requires disclosure of the identity of sources who are named Tartan Defendants and then only with respect to any of the 13 allegedly defamatory statements they made. Because the source of a statement will have information clearly relevant to whether the statement is defamatory, if any of the Tartan Defendants are the source of any of the allegedly defamatory statements, there is probable cause to believe that they have information clearly relevant to defamation. Therefore, we conclude that Weinberger has met the requirements for disclosure under section 595.025, subdivision 2(a).

■ Finally, we must determine whether "the information cannot be obtained by any alternative means or remedy

less destructive of first amendment rights." Minn.Stat. § 595.025, subd. 2(b). The district court determined:

> The parties, including the newspaper, do not dispute that plaintiff has been unable to secure the information sought by alternative means. Plaintiff has deposed each of the defendants, all of whom are or were representatives of the school district. Not one of the defendants has owned up to any of the statements in question or provided information as to the source. Nor has plaintiff been able to secure this information through investigation or other discovery. It is obvious that the only persons who know the source of each of the statements are the declarants and the reporters. It follows that if plaintiff can[]not determine the source of the statements from the declarants, the only other available means to secure that information is from the reporters.

The court of appeals agreed with the district court that this factor weighed in Weinberger's favor. *Weinberger*, 648 N.W.2d at 260. Moreover, before this court, the parties do not dispute that the requirements of section 595.025, subdivision 2(b), have been satisfied. Therefore, we conclude that Weinberger has met the requirements for disclosure under section 595.025, subdivision 2(b).[8]

Because we conclude that Weinberger has satisfied each of the statutory requirements for disclosure under Minn.Stat. § 595.025, we conclude that the district court properly found that the statutory requirements for compelled disclosure were satisfied and hold that Wakefield must comply with the district court's order.[9]

Reversed and remanded.

Dissenting, MEYER and ANDERSON, PAUL, H., JJ.

MEYER, Justice (dissenting).

I dissent. Under a straightforward application of First Amendment principles to the facts of this case, I would conclude that the *Maplewood Review* reporter has the right to keep his sources anonymous. The majority applies Minnesota's Free Flow of Information Act to deny the reporter the First Amendment's protection, even though the purpose of the Free Flow Act is to provide a shield against disclosure of confidential sources—a shield that was intended to give *more* protection to reporters than is available under the First Amendment. The majority reaches a paradoxical result, finding the reporter unpro-

---

8. The dissent suggests that Weinberger can prove defamation by evidence of similar statements made by the Tartan Defendants to third parties and thus does not need to rely on statements from the Maplewood Review article. But these similar statements do not provide Weinberger with a "remedy less destructive of First Amendment rights" because the statements to third parties and the statements in the Maplewood Review article constitute separate publications, each of which results in a separate injury, gives rise to separate damages, and supports a separate cause of action for defamation. *See, e.g.*, Restatement (Second) of Torts § 577A cmt. a (1977) (stating that "each communication of the same defamatory matter by the same defamer, wheth-

er to a new person or to the same person, is a separate and distinct publication, for which a separate cause of action arises"). Obviously, damage to one's reputation from statements made in a newspaper article can be significantly greater than the damage resulting from a statement made to a single person or a small group of people. Thus, allowing Weinberger to proceed with his defamation claims based upon statements made to third parties does not provide a remedy for his separate cause of action based upon the statements in the Maplewood Review article.

9. To the extent the analysis in *Bauer* is inconsistent with this opinion, it is overruled.

tected by the shelter of the Act, despite the presence of constitutional protection against compelled disclosure.

I begin with some observations about the essential role of a free press in a democratic society. Reporters' use of anonymous sources strengthens our system of democracy, allowing knowledgeable individuals to critique public officials or policies without fear of reprisal. *See Minneapolis Star & Tribune Co. v. Minn. Comm'r of Revenue,* 460 U.S. 575, 585, 103 S.Ct. 1365, 75 L.Ed.2d 295 (1983) ("An untrammeled press is a vital source of public information, and an informed public is the essence of working democracy") (internal alterations and citation omitted); Laurence B. Alexander, *Looking Out for the Watchdogs: A Legislative Proposal Limiting the Newsgathering Privilege to Journalists in the Greatest Need of Protection for Sources and Information,* 20 Yale L. & Pol'y Rev. 97, 104–07 (2002). Courts protect the anonymity of reporters' sources in part so that whistleblowers' speech is not chilled. As a federal circuit court stated:

> A journalist's inability to protect the confidentiality of sources s/he must use will jeopardize the journalist's ability to obtain information on a confidential basis. This in turn will seriously erode the essential role played by the press in the dissemination of information and matters of interest and concern to the public.

*Riley v. City of Chester,* 612 F.2d 708, 714 (3d Cir.1979) (citations omitted); *accord* The Reporters Committee for Freedom of the Press, *Agents of Discovery: A Report on the Incidence of Subpoenas Served on the News Media in 1999* 15 (2001) (noting that the burden that subpoenas place "on newsgathering strikes at the very notion of the press as an independent, impartial watchdog that has provided an essential

service in this country for centuries"). The concern is not merely hypothetical, but has been borne out in practice. Newspapers in states that protect journalists from subpoenas of their anonymous sources conduct more investigative reports than do their counterparts in states without such laws. Alexander, *supra,* at 102.

The majority fails to give any First Amendment context to its decision, which is where I would begin my analysis. I would analyze this case first under traditional constitutional principles, and then apply the factors set forth in Minnesota's Free Flow of Information Act. The foundational United States Supreme Court case regarding a reporter's First Amendment privilege to maintain the confidentiality of his or her sources is *Branzburg v. Hayes,* 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972). In that case, the Court considered four consolidated cases. In two of them a Kentucky reporter wrote about local drug use by utilizing confidential subjects, and refused to identify the subjects when subpoenaed by state grand juries. *Id.* at 667–70. In the other two cases, journalists who had covered the Black Panthers refused to answer questions from grand juries regarding the group's activities. *Id.* at 672–79. The Court phrased the legal issue narrowly, as "the obligation of reporters to respond to grand jury subpoenas as other citizens do and to answer questions relevant to an investigation into the commission of crime." *Id.* at 682. The Court held that requiring reporters to testify before state or federal grand juries when they are subpoenaed in criminal cases does not violate the First Amendment. *Id.* at 690. In reaching that conclusion, the Court considered the absence of a reporter's privilege to refuse queries of a grand jury, the pivotal role of grand juries in our criminal system, the public interest in law enforcement, and the small quantity of confidential news sources that

would be implicated in criminal cases. *Id.* at 685–700.

The *Branzburg* opinion does not determine the issue before us, however. *Branzburg* limited itself to the question of reporters' refusals to produce information to a grand jury called by the government to investigate suspected criminal activity.[1] The Supreme Court has not considered whether reporters can be forced to turn over names of confidential sources outside the context of a legitimate criminal investigation. However, the underlying rationale in *Branzburg* and federal circuit courts' interpretations of *Branzburg* offer guidance on the constitutional treatment of this issue in the context of a civil case.

*Branzburg* implicitly accepts that in order to determine the constitutionality of a court's compelled disclosure from a journalist, the government's interest in obtaining the information must be balanced against the newspaper's interest in keeping it confidential. *See id.* at 690, 92 S.Ct. 2646. The Court stated: "[W]e perceive no basis for holding that the public interest in law enforcement and in ensuring effective grand jury proceedings is insufficient to *override* the consequential, but uncertain, burden on news gathering that is said to result." *Id.* The Court then stated that "we cannot accept the argument that the public interest in possible future news about crime from undisclosed, unverified sources *must take precedence over* the public interest in pursuing and prosecuting those crimes reported to the press by informants." *Id.* at 695 (emphasis added).

A balancing test was more explicitly adopted by Justice Powell in his *Branzburg* concurrence, which offered this test:

> The asserted claim to privilege should be judged on its facts by the striking of a proper balance between freedom of the press and the obligation of all citizens to give relevant testimony * * *. The balance of these vital constitutional and societal interests on a case-by-case basis accords with the tried and traditional way of adjudicating such questions.

*Id.* at 710.

Since *Branzburg,* the majority of federal circuit courts have fashioned balancing tests to determine whether reporters may maintain the confidentiality of their sources in actions where the news gatherer or publisher is not a party.[2] *See Ashcraft v. Conoco, Inc.,* 218 F.3d 282, 287 (4th Cir.2000); *Shoen v. Shoen,* 48 F.3d 412, 416 (9th Cir.1995); *In re Petroleum Prods. Antitrust Litig.,* 680 F.2d 5, 7–9 (2d Cir. 1982); *Zerilli v. Smith,* 656 F.2d 705, 712–14 (D.C.Cir.1981); *Riley v. City of Chester,* 612 F.2d 708, 716–17 (3d Cir.1979). Although courts have articulated different factors to weigh in the balancing, three common factors are: whether the information sought is material, whether it is obtainable from another source, and whether it is necessary or critical to the maintenance of the claim. *See, e.g., Ashcraft,* 218 F.3d at 287; *Larouche v. Nat'l Broad. Co.,* 780 F.2d 1134, 1139 (4th Cir.1986); *United States v. Burke,* 700 F.2d 70, 77 (2d Cir.

---

**1.** We have applied *Branzburg* in criminal cases. *See State v. Turner,* 550 N.W.2d 622, 628 (Minn.1996). However, some courts have provided reporters more protection and have applied a constitutional balancing test even in criminal cases. *See United States v. Burke,* 700 F.2d 70, 77 (2d Cir.1983); *United States v. Cuthbertson,* 630 F.2d 139, 148 (3d Cir.1980).

**2.** In *Herbert v. Lando,* 441 U.S. 153, 169, 99 S.Ct. 1635, 60 L.Ed.2d 115 (1979), the Supreme Court noted that there are special concerns in a defamation suit where the media is the defendant. When a reporter or newspaper is being sued, they must make available information that is key to the outcome of the plaintiff's case. *See id.* at 170, 99 S.Ct. 1635.

1983); *In re Petroleum Prods. Antitrust Litig.,* 680 F.2d at 7–9.

Several circuit courts have applied the factors above and found that the reporter could maintain the confidential nature of his or her source. *See Shoen,* 48 F.3d at 416 (involving a nonparty author who refused to identify a source in a libel action); *In re Petroleum Prods. Antitrust Litig.,* 680 F.2d at 9 (involving a nonparty publisher who refused to turn over documents naming confidential sources in an antitrust suit); *Zerilli,* 656 F.2d at 714–15 (involving a nonparty reporter who refused to identify his sources in a civil action); *Riley,* 612 F.2d at 716–18 (involving a nonparty reporter who refused to identify a confidential source in a civil action). I would reach the same result when balancing the three common factors in Weinberger's case— whether the information sought is material, whether it is obtainable from another source, and whether it is necessary or critical to the maintenance of the claim.

In balancing Weinberger's interest in protecting his reputation against the public interest in robust and uninhibited public debate,[3] I find two factors weigh heavily against compelling the reporter to disclose his sources. Weinberger has made no showing that the information is material, nor that the information is necessary or critical to his case. On the first point, it is not clear that identifying the sources of the statements in the article would be material to Weinberger's case because he has presented scant evidence of the statements' falsity, which is the first element in a prima facie case of defamation. Reading through the depositions and affidavits submitted by Weinberger, only one of the statements from the article that the district court identified as potentially libelous was contradicted. While one of the statements says Weinberger "gave a severe tongue-lashing to several of his players at halftime during" a football game between Tartan and Park High School, a number of people signed affidavits swearing that Weinberger did not berate, ridicule, or verbally abuse his players during halftime at that game.[4] The majority of the affidavits support the article's general thrust— that school officials allegedly received numerous complaints about Weinberger's behavior both as a coach and teacher, and had decided to discipline him.

Even more importantly in the context of the First Amendment, Weinberger has not established that identifying the source of the quotes is *necessary* to maintaining his case.[5] The majority assumes that Weinberger must possess the identities of the sources quoted in the article in order to pursue his claim; however, Weinberger does not need that information to prove any element of his case because his defamation suit is not based solely on the

---

**3.** *See Herbert v. Lando,* 441 U.S. 153, 169, 99 S.Ct. 1635, 60 L.Ed.2d 115 (1979) (noting that individuals have a protected interest in their reputation); *New York Times v. Sullivan,* 376 U.S. 254, 270, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964) (remarking on the public interest in a robust debate on public issues).

**4.** Even those statements do not directly contradict the article's summary, however. A tongue-lashing does not necessarily imply berating or ridiculing. And, at least one affiant suggested that Weinberger's language at halftime was strong, saying Weinberger's "initial comments were emotional [at halftime] and

served to get the players['] attention and impart the urgency of the situation."

**5.** Weinberger must prove four things to win his defamation case against defendants: the statements about the plaintiff are false; the statements were "published" without privilege; such publication harmed the plaintiff's reputation; and the statements were made with actual malice, meaning knowledge that the statements were false or reckless disregard of their truthfulness. *See Britton v. Koep,* 470 N.W.2d 518, 520 (Minn.1991).

statements made in the newspaper. While the quotes in the article may have further harmed his reputation in the teaching community, the affidavits he has presented offer ample evidence that similar statements of his alleged behavior were communicated to third parties on multiple occasions. Many affiants refer to the defendants' oral statements regarding allegations of Weinberger abusing students and deserving disciplinary action. Indeed, Weinberger's complaint focuses more on the defendants' allegedly defamatory statements to coaches, administrators, students, and parents than on the defendants' alleged statements to the *Maplewood Review*. Because evidence is available that allegedly defamatory statements were published via means other than the newspaper articles, the information Weinberger seeks is neither necessary nor critical to his ability to maintain the defamation action against defendants.

In contrast to the marginal benefit to Weinberger's defamation claim of forcing the *Maplewood Review* reporter to divulge his confidential sources, the harm to the public would be significant. By publishing the story, a local newspaper was attempting to air serious allegations against a popular local teacher and coach, serving an important role in keeping the community informed about the education of its children. The reporter received information from both confidential and attributed sources about the reasons for Weinberger's impending departure, and verified those sources sufficiently to avoid being sued for defamation. The public has a legitimate interest in issues surrounding public education and the conduct of public officials in the exercise of their duties. Requiring the disclosure of a reporter's sources in this context will have the effect of chilling other stories of public interest. Courts should not discourage confidential sources from adding to the public debate

by compelling reporters to disclose the sources' identities, but instead should assist reporters' efforts to maintain confidential sources, especially in a case like the instant one where there has been little showing that the sources are material or necessary to the plaintiff's case. I would hold that the Federal Constitution protects the reporter's claim of privilege in this case.

I turn to the application of the Free Flow of Information Act to the facts of this case. Minnesota was one of many states that passed legislation in direct response to the *Branzburg* ruling, to insure that news gatherers were afforded definite protection from subpoenas and lawsuits. Alexander, *supra*, at 110, 112–13. Minnesota enacted the Minnesota Free Flow of Information Act in order to "insure and perpetuate, consistent with the public interest, the confidential relationship between the news media and its sources." Minn.Stat. § 595.022 (2002); *see also State v. Turner*, 550 N.W.2d 622, 631 (Minn.1996) (noting the statute "was a reaction to the *Branzburg* decision, and was intended to provide additional protection to reporters and their employers against subpoenas from litigating parties"). As a general rule, our statute says:

> [N]o person who is or has been directly engaged in the [newsgathering process] * * * shall be required by any court, grand jury [or other political agency or subdivision] * * * to disclose in any proceeding the person or means from or through which information was obtained * * * whether or not it would tend to identify the person or means through which the information was obtained.

Minn.Stat. § 595.023 (2002). Because the straightforward application of this general rule clearly protects the reporter's ability to maintain the confidentiality of his sources in this case, the majority attempts

to fit this case into an exception to the general rule. The majority uses the exception for defamation actions in Minn. Stat. § 595.025 (2002), and concludes that Weinberger has met all three conditions of disclosure listed: that the source's identity will lead to relevant evidence on the issue of actual malice; that there is reason to believe the source has relevant information about the issue of defamation; and "that the information cannot be obtained by any alternative means or remedy less destructive of first amendment rights."[6]

I turn to the majority's application of the Free Flow of Information Act to the facts of this case. Although clearly intended to expand the reporter's constitutional privilege after *Branzburg*, the majority applies the Free Flow of Information Act to give Weinberger less protection than he deserves under the Constitution. I would apply the statute differently, and conclude he has not satisfied the three conditions of the statute. *See* Minn.Stat. § 595.025. The first prong of the statute asks a plaintiff to "demonstrate that the identity of the source will lead to relevant evidence on the issue of actual malice." Minn.Stat. § 595.025, subd. 1. Applying this prong, the majority accepts Weinberger's assertion of relevance and writes "it is self-evident that the identity of the speaker will lead to relevant evidence on the issue of actual malice."[7] Even if we accept that Weinberger meets the first prong because knowledge of the sources' identities, when combined with other information, may provide evidence relevant to the question of actual malice, he cannot meet the second prong of the statute. The second prong requires that the plaintiff provide "probable cause to believe that the source has information clearly relevant to the issue of defamation." Minn.Stat. § 595.025, subd. 2(b). There is no defamation without falsity, so to satisfy the second prong a plaintiff must make an initial demonstration that there is a material dispute as to the truth or falsity of the statements at issue. As discussed above, Weinberger has not made a sufficient showing that the quotes in the article were false. Nor has he met the third prong by showing that there is no remedy less destructive of First

6. The majority does not fully analyze the third prong of the statute's test, whether the information can be obtained by a means less destructive of First Amendment rights, but rather relies on the district court's determination and the parties' agreement on the question. The parties' agreement on that question has no bearing on our application of the statute. I would not relinquish our duty to determine the Constitutional impact of the grant of a particular remedy. In this case, there *is* an alternative remedy that is "less destructive of First Amendment rights": sending Weinberger to trial without the identities of the anonymous sources in the newspaper. Weinberger can rely on the defendants' statements to third parties and the attributed statements in the newspaper.

7. The majority's broad interpretation of this prong dilutes it to the point where it is meaningless, because any defamation plaintiff could satisfy it. If we accept the level of nominal relevance defined by the majority, all defamation plaintiffs seeking to compel disclosure from reporters will meet this prong, because if the plaintiffs invoke this statute, they must seek the identity of the reporters' anonymous source. Such an interpretation of the statute violates our mandate to consider the purpose of the statute and assume that the legislature does not intend an absurd result. *See* Minn.Stat. §§ 645.16–.17 (2002). The legislature's purpose in enacting this statute was to "insure and perpetuate * * * the confidential relationship between the news media and its sources." Minn.Stat. § 595.022. With that in mind, I think it is likely that the legislature intended this statute to apply only when the reporter is being sued for defamation. In such a case, relevant evidence would include the identity of a reporter's source, because the source would have information about the reporter's knowledge at the time of publication. *See Herbert*, 441 U.S. at 169–70, 99 S.Ct. 1635.

Amendment principles. *See* Minn.Stat. § 595.025, subd. 2(b). A less destructive remedy is available: Weinberger is free to proceed with known evidence of publication of similar statements to those printed in the *Maplewood Review*. I would conclude that Weinberger fails to meet the second and third prongs of the statute and, therefore, cannot compel disclosure under the Free Flow of Information Act.

I dissent because I believe that Weinberger's interest in determining whether these four defendants made any of the allegedly defamatory statements in the newspaper articles is slight compared with the damage that compelling disclosure in such a case could do to the free flow of public information. A defamation plaintiff cannot transform a reporter from a neutral observer into an informant for the plaintiff when the information sought is not necessary to maintain the plaintiff's case. The confidentiality of the sources is protected both by the First Amendment of the United States Constitution and Minnesota's Free Flow of Information Act. I would affirm the court of appeals.

ANDERSON, PAUL H., Justice (dissenting).

I join in the dissent of Justice Meyer.