Robert BAUER, Respondent,

v.

GANNETT CO., INC. (KARE 11), et al., Appellants,

Margaret Bichsel, et al., Defendants.

No. C9–96–1694.

Court of Appeals of Minnesota.

Jan. 14, 1997.

Dorothy J. Buhr, Sisam & Associates, P.A., Minneapolis, for Respondent.

Thomas Tinkham, Edward B. Magarian, Leslie J. Anderson, Dorsey & Whitney LLP, Minneapolis, for Appellants.

John P. Borger, Eric E. Jorstad, Faegre & Benson LLP, Minneapolis, for amici curiae.

Considered and decided by LANSING, P.J., TOUSSAINT, C.J., and HUSPENI, J.

## OPINION

LANSING, Judge.

A reporter and media organization, defendants in a defamation action brought by a public official, appeal from a discovery order requiring them to disclose the identities of confidential sources interviewed for an investigative report. Because we conclude that the district court did not address all of the factors relevant to a disclosure order, we reverse and remand.

## FACTS

KARE 11 aired an investigative report on the administration and management of the Ramsey County Special Courts and the courts' administrator, Robert Bauer, in November 1994. The segment was researched and reported by Gail Plewacki and was critical of the courts and Bauer. It included, for example, video footage of Bauer repeatedly leaving his work area to take smoking breaks and also showed him golfing during hours that he would normally be scheduled to work. Over the images Plewacki says, "[T]his is what Bauer does for an average of five hours a week. That would mean more than eight thousand dollars, in taxpayer money, * * * going up in smoke every year."

Bauer brought a defamation action against KARE 11 and some of the identified sources in the report. It is undisputed that Bauer, as court administrator, was a public official and needs to prove actual malice to prevail in his defamation action. *See New York Times Co. v. Sullivan,* 376 U.S. 254, 279, 84 S.Ct. 710, 726, 11 L.Ed.2d 686 (1964).

In a deposition Plewacki was asked who told her what Bauer's schedule and work hours were. Plewacki refused to answer the questions, asserting privilege under the Minnesota reporters' shield law and the First Amendment.

Bauer then moved to compel disclosure of the confidential source. Specifically, the two questions before the district court on the motion to compel were: (1) *Who told you what time Mr. Bauer's work hours were?* and (2) *Is the person who disclosed Mr. Bauer's work hours someone other than Dawn Palmer, Margaret Bichsel, Judy Dicks, Michelle Barrette, or Alf Sivertson?*

The district court granted the motion, but broadened it by ruling that all of Plewacki's confidential sources were subject to disclosure, not just the source of the work hours information. KARE 11 appeals.

## ISSUE

In a defamation action against a news organization, when must the media's qualified constitutional privilege codified at Minn.Stat. § 595.021–.025 (1994) yield to allow disclosure of a reporter's confidential source?

## ANALYSIS

This appeal points up the tension between two equally fundamental principles: the freedom and independence of the press, and the right to protect and vindicate one's reputation.

The First Amendment protects the fundamental value of a free and independent press. The protection afforded the press includes a reporter's limited right not to disclose his or her confidential sources. *See, e.g., Miller v. Transamerican Press,* 621 F.2d 721, 725 (5th Cir.) *(Miller I ), modified,* 628 F.2d 932 (5th Cir.1980) *(Miller II ), cert. denied,* 450 U.S. 1041, 101 S.Ct. 1759, 68 L.Ed.2d 238 (1981);

*J.J.C. v. Fridell,* 165 F.R.D. 513, 516 (D.Minn.1995); *PPM Am., Inc. v. Marriott Corp.,* 152 F.R.D. 32, 35 (S.D.N.Y.1993); 23 Charles Alan Wright & Kenneth W. Graham, Jr., *Federal Practice and Procedure,* § 5426 at 716 (1980); William Penner, Note, *Cohen v. Cowles Media Co.: Upsetting the First Amendment Scales,* 26 U.S.F. L.Rev. 753, 758–63 (1992). The Minnesota Supreme Court recently analyzed the qualified constitutional privilege afforded reporters. *State v. Turner,* 550 N.W.2d 622, 629 (Minn.1996) (holding that constitutional privilege requires in camera review of journalist's unpublished photos before disclosure compelled). The protections of the reporter's privilege are the same under the Minnesota and federal constitutions. *Id.* at 628.

■ The media's qualified constitutional privilege is rooted in the desire to promote effective newsgathering and to preserve the free flow of public information. News reporters frequently rely on informants to gather news, and the offer of confidentiality is often a prerequisite to an informant's cooperation. Compelling a reporter to disclose the identity of a confidential source may significantly interfere with the press's ability to gather news. *See* Minn.Stat. § 595.022 (1994); *Zerilli v. Smith,* 656 F.2d 705, 710–11 (D.C.Cir.1981); *Miller I,* 621 F.2d at 725; *Cervantes v. Time, Inc.,* 464 F.2d 986, 992 n. 9 (8th Cir.1972), *cert. denied,* 409 U.S. 1125, 93 S.Ct. 939, 35 L.Ed.2d 257 (1973); John B. Kuhns, Note, *Reporters and Their Sources: The Constitutional Right to a Confidential Relationship,* 80 Yale L.J. 317, 329–34 (1970). When the media are reporting a matter of public concern the interest in fostering effective newsgathering is particularly strong. *Miller I,* 621 F.2d at 726. The activities of public figures are matters of public concern. *Id.* at 725–26.

Also of great importance to a just and fair society is the right of individuals to protect and defend their reputations. The tort of defamation as well as the constitutional protection afforded individuals to control the use and dissemination of personal information both reflect the value of reputation. *See Herbert v. Lando* 441 U.S. 153, 169, 99 S.Ct. 1635, 1645, 60 L.Ed.2d 115 (1979) ("[T]he individual's interest in his reputation is * * * a basic concern."); Lawrence H. Tribe, *American Constitutional Law* §§ 12–12 (defamation), 15–16 (personal information) (2d ed. 1988). Basic as well is the judicial interest in obtaining the truth through full disclosure of relevant evidence and testimony. "The concept that it is the duty of a witness to testify in a court of law has roots fully as deep in our history as does the guarantee of a free press." *Garland v. Torre,* 259 F.2d 545, 548 (2d Cir.), *cert. denied,* 358 U.S. 910, 79 S.Ct. 237, 3 L.Ed.2d 231 (1958).

The Minnesota Free Flow of Information Act, Minn.Stat. § 595.021–.025 (1994), like the reporter's qualified constitutional privilege, seeks to mediate the tension between these competing values. The stated purpose of the Act reads:

> In order to protect the public interest and the free flow of information, the news media should have the benefit of a substantial privilege not to reveal sources of information or to disclose unpublished information. To this end, the freedom of the press requires protection of the confidential relationship between the news gatherer and the source of information. The purpose of sections 595.021 to 595.025 is to insure and perpetuate, consistent with the public interest, the confidential relationship between the news media and [their] sources.

Minn.Stat. § 595.022.

The Act was passed in 1973, one year after the United States Supreme Court's decision in *Branzburg v. Hayes,* 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972), which refused to excuse news reporters from the obligation to appear and testify before federal and state grand juries. The Act provides general protection to reporters from compelled disclosure of their sources: "No [reporter] shall be required by any court * * * to disclose in any proceeding the person or means from or through which information was obtained * * * ." Minn.Stat. § 595.023. But an exception is made if clear and convincing evidence shows that (1) there is probable cause to believe that the source has clearly relevant information, (2) the information is not available through any alternative means, and (3) a compelling interest requires disclosure to

prevent injustice. *See* Minn.Stat. § 595.024, subd. 2. This court and the Minnesota Supreme Court have held that the protections of the Act apply only to *confidential* sources and information leading to their identity. *Turner*, 550 N.W.2d at 631; *State v. Knutson (Knutson II)*, 539 N.W.2d 254, 257 (Minn. App.1995); *Heaslip v. Freeman*, 511 N.W.2d 21, 23–24 (Minn.App.1994), *review denied* (Minn. Feb. 24, 1994).

The statute includes a specific section covering cases which allege defamation:

Subdivision 1. **Disclosure; application.** The prohibition of disclosure provided in section 595.023 shall not apply in any defamation action where the person seeking disclosure can demonstrate that the identity of the source will lead to relevant evidence on the issue of actual malice.

Subdivision 2. **Disclosure allowed; conditions.** Notwithstanding the provisions of subdivision 1, the identity of the source of information shall not be ordered disclosed unless the following conditions are met:

(a) that there is probable cause to believe that the source has information clearly relevant to the issue of defamation;

(b) that the information cannot be obtained by any alternative means or remedy less destructive of first amendment rights.

Minn.Stat. § 595.025.

The Minnesota appellate courts have not yet considered the extent to which the requirements of the Minnesota Free Flow of Information Act comport with constitutional standards. We must construe statutes so as to uphold their constitutionality if possible. *Minnesota Higher Educ. Facilities Auth. v. Hawk*, 305 Minn. 97, 103, 232 N.W.2d 106, 110 (1975); *State v. Minnesota Fed. Sav. & Loan Ass'n*, 218 Minn. 229, 243, 15 N.W.2d 568, 575 (1944). Therefore, we interpret the Act in light of the constitutional imperatives of the reporter's qualified privilege. We believe the scope of the reporter's privilege in each particular case depends on the consideration and weighing of a number of interrelated factors. Because we believe that preserving the media's First Amendment rights requires a balancing of the factors discussed below, we incorporate these factors into any consideration of cases arising under the Act.

First, the determination of whether the privilege applies is influenced by the nature of the litigation and whether the reporter or news organization from whom disclosure is sought is a party to the litigation. When the reporter is a party to the litigation, the balance may tip more in favor of disclosure than when the reporter is not a party. This is particularly true in a suit alleging the defamation of a public official or public figure because plaintiffs in those cases must prove that the defamatory publication was made with "actual malice." The disclosure of a confidential source may be essential to the proof of actual malice if a plaintiff must demonstrate that the reporter's source was unreliable. *See, e.g., Zerilli*, 656 F.2d at 714. We stress, however, that this consideration is not dispositive, but rather one of multiple factors to be weighed in the district court's decision. *See id.*

Second, the party seeking disclosure of a confidential source must demonstrate that the source's identity is clearly relevant to the action. Several courts have described the relevance standard as requiring a showing that the information goes to "the heart" of the plaintiff's claim. *Id.* at 713; *Silkwood v. Kerr–McGee Corp.*, 563 F.2d 433, 438 (10th Cir.1977); *Carey v. Hume*, 492 F.2d 631, 634 (D.C.Cir.), *cert. dismissed*, 417 U.S. 938, 94 S.Ct. 2654, 41 L.Ed.2d 661 (1974); *Garland*, 259 F.2d at 550. We believe that when the district court has "probable cause to believe that the source has information clearly relevant to defamation," Minn.Stat. § 595.025, subd. 2(a), the "heart of the claim" standard is satisfied.

The constitutional standard, as well as the plain meaning of the statutory text, however, require the district court to perform an exacting analysis of each individual request for disclosure of a confidential source or information leading to his or her identity to determine if that particular source or that particular information is clearly relevant to the claim. A blanket order compelling disclosure of all confidential sources used to compile a report without inquiry into the relevance of

each individual request will not satisfy this standard. *See Mitchell v. Superior Court,* 37 Cal.3d 268, 208 Cal.Rptr. 152, 160, 690 P.2d 625, 633 (1984) ("Discovery of the [reporters'] sources, and information derived from such sources, may be essential to proving actual malice, and thus goes to 'the heart' of plaintiffs' claim against these defendants. The .discovery sought by plaintiffs, however, is quite broad, and is not limited to sources whose information relates to the alleged libelous statements."). Ordering the disclosure of all confidential sources is not a permissible means of sanctioning uncooperative discovery tactics if it runs afoul of the Constitution. Other important considerations in evaluating relevance in this context are whether the allegedly defamatory publication referred to confidential sources and whether the information gained from those sources was used directly in the publication. *See Sierra Life Ins. Co. v. Magic Valley Newspapers, Inc.,* 101 Idaho 795, 623 P.2d 103, 109 (1980).

A third factor in the balance is the efforts made by the party seeking disclosure to obtain the information from alternative sources. The Act allows for disclosure only when the moving party has demonstrated that "the information cannot be obtained by *any alternative means* or remedy less destructive of first amendment rights." Minn.Stat. § 595.025, subd. 2(b) (emphasis supplied). We are certain that this requirement meets the corresponding constitutional imperative. Most courts have required that the movant show an exhaustion of all reasonable alternative means of obtaining the information. *Shoen v. Shoen (Shoen II),* 48 F.3d 412, 416 (9th Cir.1995); *Zerilli,* 656 F.2d at 713; *J.J.C.,* 165 F.R.D. at 516; *Mitchell,* 208 Cal. Rptr. at 161, 690 P.2d at 634. We decline to endorse any formulaic approach relying, for example, on numbers of potential sources interviewed or deposed to determine whether the "any alternative means" condition has been satisfied. But we note that this requirement places a burden on the movant to demonstrate that substantial efforts have been made to obtain the information through other means—what constitutes substantial efforts will necessarily vary from case to case. *See Zerilli,* 656 F.2d at 714 (stating in

case involving third-party subpoena that "the obligation is clearly very substantial").

Fourth, the court must consider whether there is a compelling interest in the information or source. *Miller I,* 621 F.2d at 726 (citing *Garland* ). Thus, the court should consider not only the relevance but also the necessity of any information a confidential source might have. There may be no need to disclose the identity of relevant confidential sources: evidence of malice may be available from nonconfidential sources, or the defendant may have sufficient evidence of truth and prudence in publishing to prevail on a motion for summary judgment. *Id.; Cervantes,* 464 F.2d at 992. A compelling interest might also keep the court from disclosing the identity of a confidential source despite demonstrated relevance and necessity. *See Mitchell,* 208 Cal.Rptr. at 161, 690 P.2d at 634 ("[W]hen the information relates to matters of great public importance, and when the risk of harm to the source is a substantial one, the court may refuse to require disclosure even though the plaintiff has no other way of obtaining essential information.").

Finally, we agree with a number of courts which have determined that, when the circumstances merit, the court may first require the plaintiff to make a prima facie showing that the alleged defamatory statements are false. *See Bruno & Stillman, Inc. v. Globe Newspaper Co.,* 633 F.2d 583, 597 (1st Cir. 1980); *Miller II,* 628 F.2d at 932; *Mitchell,* 208 Cal.Rptr. at 161, 690 P.2d at 634; *Hopewell v. Midcontinent Broadcasting Corp.,* 538 N.W.2d 780, 782 (S.D.1995), *cert. denied,* —— U.S. ——, 117 S.Ct. 69, 136 L.Ed.2d 30 (1996); *Dallas Morning News Co. v. Garcia,* 822 S.W.2d 675, 680 (Tex.Ct. App.1991); *see also Cervantes,* 464 F.2d at 994 (applying related principle: "The point of principal importance is that there must be a showing of cognizable prejudice before the failure to permit examination of anonymous news sources can rise to the level of error.").

Because compelled disclosure impinges on the basic right of a free and unfettered press, it is not an unreasonable requirement that a defamation plaintiff first present enough evidence to permit a fact-finder to believe the published statements were false. The bur-

den is on the plaintiff in a defamation action to prove that the published statements are false. *Philadelphia Newspapers, Inc. v. Hepps,* 475 U.S. 767, 776–77, 106 S.Ct. 1558, 1564, 89 L.Ed.2d 783 (1986). Proof of actual malice is an additional requirement and does not affect the showing of falsity. *See Masson v. New Yorker Magazine, Inc.,* 501 U.S. 496, 517, 111 S.Ct. 2419, 2433, 115 L.Ed.2d 447 (1991) (substantially true statements cannot provide foundation for finding of actual malice). Stated differently, if the court would grant summary judgment for the defendant on the grounds that the plaintiff, regardless of the identity of the confidential sources, would be unable to establish falsity or malice, then there is no need for disclosure. *See Cervantes,* 464 F.2d at 994. Again we stress that this, like the other factors enumerated above, is a consideration for the district court to weigh in its decision. We agree with the California Supreme Court that "[a] showing of falsity is not a prerequisite to discovery, but it may be essential to tip the balance in favor of discovery." *Mitchell,* 208 Cal.Rptr. at 161, 690 P.2d at 634.

The court's obligation to protect the First Amendment rights of the press does not end with completion of the careful weighing of these factors. The court has the duty, where applicable, to review in camera any evidence to determine its actual relevance before ordering it to be disclosed. *Turner,* 550 N.W.2d at 629. Further, we believe the court has a duty to take reasonable measures to protect informants from harmful consequences when it orders their identities disclosed. *See Miller I,* 621 F.2d at 727 (requiring district court to restrict access to informant's identity to counsel).

## DECISION

Because the district court did not address all of the relevant factors or separately analyze each individual request in imposing its disclosure order, we remand for further consideration consistent with this opinion.

**Reversed and remanded.**