**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0122**

Range Development Company of Chisholm, et al.,
Respondents,

vs.

Star Tribune, et al.,
Defendants,

Paul McEnroe,
Appellant.

**Filed September 12, 2016
Reversed
Jesson, Judge**

St. Louis County District Court
File No. 69HI-CV-14-665

James F. Clark, Clark Law Office, P.C., Hibbing, Minnesota (for respondent)

John P. Borger, Mary A. Walker, Leita Walker, Faegre Baker Daniels LLP, Minneapolis, Minnesota (for appellant)

Considered and decided by Stauber, Presiding Judge; Reyes, Judge; and Jesson, Judge.

**S Y L L A B U S**

The standards for ordering disclosure of a journalist's confidential source under Minnesota Statutes section 595.025, subdivisions 1, 2 (2014), require an affirmative demonstration that the identity of the source will lead to persuasive evidence on the elements of a defamation claim.

## **O P I N I O N**

**JESSON**, Judge

In this defamation action, appellant-journalist Paul McEnroe seeks review of the district court's order compelling him to reveal the identity of a source who supplied him with a government report critical of respondent-plaintiff Range Development Company (Range), owner of an assisted-living center. Because we conclude that, under the defamation exception to the Minnesota Free Flow of Information Act, Minnesota Statutes sections 595.021-.025 (2014), a plaintiff seeking to discover the identity of a journalist's confidential source must make an affirmative showing that disclosing the source would lead to persuasive evidence on the elements of falsity or malice, and because the district court erred by ordering discovery when this requirement was not met, we reverse.

## **FACTS**

On January 15, 2013, an aide at Hillcrest Terrace Assisted Living Facility in Chisholm found a resident slouched in his chair, unresponsive to shaking or shouting. Employees of Hillcrest, which is owned by Range, called emergency personnel. Chisholm police officers and a crew from Chisholm Ambulance Service quickly arrived. They discovered the resident, still unresponsive, seated in a urine-soaked chair. The police officers noticed that the resident's room was messy and cluttered, with the carpet soaked in urine. The strong odor of urine compelled one officer to leave the room. Employees of the ambulance service also encountered a strong urine smell and noticed that the floor was "sticky" near where the resident was seated. The resident, who had developmental disabilities, dementia, and diabetes, was found to have critically low blood sugar. He was

transported to a hospital, where he was diagnosed with urosepsis, a systemwide infection originating in the urinary tract. At the hospital, his condition improved.

About a week later, one of the ambulance-service employees filed a report alleging neglect of the resident in violation of the Vulnerable Adults Act, Minnesota Statutes section 626.557 (2012). The Minnesota Department of Health (MDH) investigated the matter and issued a report substantiating a finding of neglect of the resident by Hillcrest. The original MDH report referred to strong urine odors, inadequate monitoring of the resident's blood-sugar levels, his urosepsis and hospitalization, and inadequate housekeeping services. It included additional statements about the resident's condition and the state of his room, including that he "was found unresponsive" and that "[t]he end table near the recliner was stained with a black substance that appeared to be mold." It also stated that copies were being provided to several governmental entities, including the St. Louis County Attorney.

Shortly before the public release of this MDH report, Paul McEnroe, a longtime reporter for the Star Tribune, obtained a copy of the report from a confidential source and wrote an article on its contents. McEnroe's newspaper article, which was published online on April 17, 2013, and in print the next day, contained nine alleged misstatements concerning the resident's condition, the state of his room, the substantiation of neglect, and a referral to the St. Louis County Attorney's Office. The MDH report was publicly released on its website shortly after publication of McEnroe's story.

Range first administratively appealed the MDH findings, which resulted in a narrower factual basis for the maltreatment determination.[1] Next, Range filed a defamation lawsuit against Star Tribune and McEnroe, Chisholm Ambulance Service and its employees, and McEnroe's unidentified source. Discovery commenced and focused, in part, on the identity of McEnroe's source. After deposing McEnroe and several ambulance-service employees, Range was unable to identify the source.[2] McEnroe did provide an affidavit stating that the confidential source had supplied him with a copy of the report a few days before it was posted online, and that he wrote the article based on the report, and not on any other information provided by the confidential source. He acknowledged that he also based the article on his own medical research online and his general knowledge of the working relationship between licensing agencies and law enforcement relating to possible abuse of vulnerable adults.

Range moved to compel discovery of the source's identity. It argued that McEnroe's claim that all his information for the article came from the report was inconsistent with the fact that some of the article's statements (e.g., that the resident was "barely alive," and that the case was referred for criminal charges) differed from the report. Range sought to learn where—if anywhere—this additional information came from. It

---

[1] Based on further information provided in the administrative appeal, MDH decided not to pursue medical-neglect allegations, but instead to issue a maltreatment determination based only on neglect for failure to provide adequate housekeeping to maintain a livable environment.

[2] McEnroe's attorney instructed him not to answer deposition questions on whether he discussed the report with the person from whom he received it and whether that person was an MDH employee.

posited that McEnroe "got some other information from somebody else." After a hearing, the district court issued an order requiring McEnroe to disclose the identity of his source to Range's counsel.[3] The district court stated:

> Given that several statements appearing in the newspaper article in question arguably deviate significantly from the actual information available in the [MDH] report that the article is said to be based on, it is only logical to conclude the identity of defendant McEnroe's source will provide evidence as to whether or not he, or any other named defendant, spoke with actual malice in making the allegedly defamatory statements.

McEnroe filed this appeal of that order, as permitted by Minnesota Statutes section 595.025, subdivision 3. The district court then issued an order dismissing the Range corporate principals as plaintiffs and granting summary judgment in favor of defendants Chisholm Ambulance Service and its employees. But it denied summary judgment as to Star Tribune and McEnroe, concluding that three of the allegedly defamatory statements— that "black mold festered on a table," that the resident was found "barely alive," and that "[t]he case has been referred to the St. Louis County attorney's office for possible criminal charges"—met the legal thresholds for submission to a jury on the elements of material falsity and actual malice.[4] Star Tribune and McEnroe petitioned this court for discretionary

---

[3] McEnroe had by then left his job at Star Tribune and was working at KSTP-TV.

[4] In denying summary judgment, the district court also held that six of the nine defamatory statements alleged by Range were protected by a fair reporting privilege applicable to fair and accurate reports of governmental proceedings. *See Moreno v. Crookston Time Printing Co.*, 610 N.W.2d 321, 333 (Minn. 2000) (explaining the fair-reporting privilege). The district court held that three of the statements did not meet the standard for applying such a privilege. Because we do not address the merits of the order denying summary judgment, and the district court's order compelling disclosure, which is the subject of this appeal, did not address a fair-reporting privilege, we do not consider the possible application of such

5

review of the portion of the order denying summary judgment, but this court declined to grant discretionary review. We therefore address only the district court's order compelling disclosure of the confidential source.

**ISSUE**

Did the district court err by ordering disclosure of McEnroe's confidential source based on the defamation exception in the Free Flow of Information Act?

**ANALYSIS**

This case stands at the intersection of common-law defamation, the First Amendment right to free speech, and the parameters of a journalist's privilege, if any, under the First Amendment. McEnroe seeks to protect his source through recognition of a constitutionally imposed qualified journalist's privilege and a broad reading of the journalist's privilege provided by Minnesota statute in the act. He argues that, before he can be compelled to identify his source under applicable law, the district court must address the merits of Range's defamation claims. Range asserts that Minnesota has yet to recognize a First Amendment qualified journalist's privilege and that neither common law nor the act requires a person suing for defamation to establish a prima face case before being allowed to compel disclosure of a journalist's source.

This court has stood at this intersection before. In a factually similar defamation case brought against a media outlet, this court interpreted the act "in light of the

---

a privilege. *See Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988) (stating that a reviewing court generally addresses "only those issues that the record shows were presented to and considered by the [district] court in deciding the matter before it") (quotation omitted).

6

constitutional imperatives of the reporter's qualified privilege" and set forth a balancing test based on both the First Amendment and the act for courts to address in deciding whether to order disclosure of a journalist's confidential source. *Bauer v. Gannett Co. (KARE 11)*, 557 N.W.2d 608, 611-12 (Minn. App. 1997), *overruled by Weinberger v. Maplewood Review*, 668 N.W.2d 667, 675 n.9 (Minn. 2003). But five years later, in *Weinberger*, the Minnesota Supreme Court articulated a narrower construction of the statutory privilege in the act, albeit in a different factual context. *Weinberger*, 668 N.W.2d at 671-75. Following that decision, in *In re Charges of Unprofessional Conduct Involving File No. 17139*, 720 N.W.2d 807, 817 (Minn. 2006), the supreme court assumed, without deciding, that a First Amendment journalist's privilege exists.

We address the issues in this case—whether the district court erred by ordering disclosure of McEnroe's confidential source—within the framework of the act. The interpretation of that statute presents a legal issue, which this court reviews de novo. *Weinberger*, 668 N.W.2d at 671-72. We analyze the framework of the defamation exception by recognizing the relevance and probable-cause requirements of the act as interpreted in *Weinberger* and in light of Minnesota precedent addressing the intersection between defamation law and the First Amendment. Because our analysis in that regard is dispositive, we do not reach the issues of whether a First Amendment or common-law privilege exists. But because of the close relationship between those issues, a discussion of the caselaw on First Amendment and common-law privileges informs our analysis of the statutory issue.

7

Based on this analysis, we conclude that Minnesota Statutes section 595.025 requires an affirmative showing, with concrete evidence, that disclosure of the source will lead to persuasive evidence on the elements of a defamation claim. District courts, when conducting this analysis, must necessarily review the merits of the defamation claim, but will not, as McEnroe proposes, impose a prima-facie-case requirement. Here, because Range failed to demonstrate that disclosing the identity of McEnroe's source will lead to persuasive evidence on the issues of falsity and malice, we reverse the district court's order requiring disclosure of the confidential source.

I. **The standards for ordering disclosure of a confidential source under the act require an affirmative demonstration that the identity of the source will lead to persuasive evidence of defamation.**

To determine the showing necessary before a court should order disclosure of a confidential source, we first address the legal backdrop of the act. Next we examine the act itself. Finally, we move to the Minnesota decisions interpreting the act and addressing disclosures in the context of a First Amendment privilege. We conclude, after this review, that the act's relevance and probable-cause requirements require an affirmative demonstration that the identity of a source will lead to persuasive evidence of defamation before disclosure may be ordered.

Almost sixty years of debate over whether the First Amendment of the Constitution requires that journalists be permitted to protect sources has not led to a uniform answer.[5]

---

[5] In *Garland v. Torre*, the Second Circuit addressed the First Amendment claim of a right to protect a journalist's sources against the need for discovery and concluded that consideration of a journalist's privilege must take into account the public interest in a fair administration of justice. 259 F.2d 545, 548-49 (2d Cir. 1958).

In *New York Times Co. v. Sullivan*, the Supreme Court provided a definitive ruling in a related matter, holding that in cases involving the defamation of public officials or figures—or where the communication is a matter of public concern—the First Amendment limits common-law defamation liability. 376 U.S. 254, 84 S. Ct. 710 (1964). It requires a plaintiff who is a public official or figure to prove that the defendant published a false statement of fact with actual malice and that proof of malice must be made by clear and convincing evidence. *Id.* at 279-80, 285-86, 84 S. Ct. at 726, 729. But the issue of whether, in attempting to furnish that proof, a party may compel a reporter to name a source, remains without a uniform answer.

In 1972, the United States Supreme Court addressed, but did not resolve, this issue in *Branzburg v. Hayes*, 408 U.S. 665, 92 S. Ct. 2646 (1972). In *Branzburg,* which arose from a set of three cases in which prosecutors had subpoenaed journalists to appear before grand juries, a divided Supreme Court declined to adopt a broad testimonial privilege for reporters and refused to excuse them from the obligation to appear and testify before grand juries. *Id*. at 690-91, 92 S. Ct. at 2661. The opinion did state that the First Amendment affords "some protection" for newsgathering. *Id.* at 681, 92 S. Ct. at 2656.[6] But while *Branzburg* made it clear that there were First Amendment dimensions to consider before

---

[6] The fifth and deciding vote came from Justice Powell, who wrote a concurring opinion, which more clearly states that reporters are not without constitutional rights with respect to safeguarding their sources. *Id.* at 709, 92 S. Ct. at 2671 (Powell, J., concurring). Journalists should have access to move the court for a protective order, Powell wrote, and courts should balance the constitutional and societal interests on a case-by-case basis. *Id.* at 710, 92 S. Ct. at 2671.

compelling disclosure of sources, it stopped far short of adopting a constitutional privilege that protected sources.

Since *Branzburg*, state and federal appellate courts have been divided over the express recognition of a journalist's privilege that would protect the confidentiality of sources in a myriad of situations, from the defamation context to subpoenaing reporters for grand jury testimony. Many courts have recognized such a First Amendment reporter's privilege. *See Shoen v. Shoen*, 5 F.3d 1289, 1292 n.5 (9th Cir. 1993) (listing federal cases recognizing journalist's privilege); *In re Contempt of Wright*, 700 P.2d 40, 43 (Idaho 1985) (listing state cases addressing consideration of a journalist's privilege on a case-by-case basis). Under one test articulated by the Eighth Circuit Court of Appeals, a plaintiff seeking disclosure of a journalist's source in a defamation case under the First Amendment must make "a concrete demonstration that the identity of [the] source[] will lead to persuasive evidence on the issue of malice." *Cervantes v. Time, Inc.*, 464 F.2d 986, 994 (8th Cir. 1972). Minnesota has addressed, but not explicitly adopted, a journalist's privilege. *In re Charges of Unprofessional Conduct*, 720 N.W.2d at 817-18.

While over half a century of debate has not resolved the journalist's-privilege question, it has engendered at least 26 state shield laws, which provide varying amounts of protection to journalistic sources. *See* 23 Kenneth W. Graham, Jr., *Federal Practice & Procedure* § 5426 (1st ed. Supp. 2016) (listing state reporter's-privilege statutes). Shortly after *Branzburg* was decided, the Minnesota legislature enacted one of those laws: the Free Flow of Information Act. *See* 1973 Minn. Laws ch. 735, at 2201-02. As the Minnesota Supreme Court has noted, "it is clear that the Act was a reaction to the *Branzburg* decision,

and was intended to provide additional protection to reporters and their employers against subpoenas from litigating parties." *State v. Turner*, 550 N.W.2d 622, 631 (Minn. 1996). Considering the act in the defamation context, this court explained that the legislature sought to mediate the tension between the important values of promoting effective newsgathering and the right of individuals to protect and defend their reputations. *Bauer*, 557 N.W.2d at 610. With both these values in mind, the legislature stated that the purpose of the act was to confer on journalists a "substantial privilege not to reveal sources." Minn. Stat. § 595.022. The public-policy provision of the act provides:

> In order to protect the public interest and the free flow of information, the news media should have the benefit of a substantial privilege not to reveal sources of information or to disclose unpublished information. *To this end, the freedom of press requires protection of the confidential relationship between the news gatherer and the source of information. The purpose of section[s] 595.021 to 595.025 is to insure and perpetuate, consistent with the public interest, the confidential relationship between the news media and its sources.*

*Id.* (emphasis added).

While the act affords news media a substantial privilege not to disclose sources, it also carves out certain exceptions to this journalist's privilege. *See* Minn. Stat. §§ 595.024, .025. One exception applies to disclosure of sources in defamation cases if certain conditions have been met. Minn. Stat. § 595.025. Specifically, a court may order disclosure of a confidential source if "the person seeking disclosure can demonstrate that the identity of the source will lead to relevant evidence on the issue of actual malice." *Id.*, subd. 1. In addition, to meet disclosure requirements, there must exist "probable cause to believe that the source has information clearly relevant to the issue of defamation," and it

11

must be shown that "the information cannot be obtained by any alternative means or remedy less destructive of [F]irst [A]mendment rights." *Id.*, subd. 2(a), (b).

In order to determine what showing is necessary to "demonstrate that the identity of the source will lead to relevant evidence" and establish "probable cause" to justify disclosure of a source, we look to previous interpretations of the defamation exception in the act. In 1997, this court interpreted the statutory defamation exception in light of a First Amendment journalist's privilege. *Bauer*, 557 N.W.2d at 611. In *Bauer*, this court articulated a balancing test with five factors for addressing when an individual's privacy interest, as expressed in defamation law, outweighs society's interest in preserving the free flow of information embodied in the journalist's privilege. *Id.* at 611-12. One of those factors involved examining whether the plaintiff has made out a prima facie case of defamation by showing the falsity of the alleged defamatory statement. *Id.* at 612.

In 2003, however, the Minnesota Supreme Court took a narrower view of the statutory privilege in *Weinberger*, 668 N.W.2d at 671-75. In that case, the supreme court affirmed an order requiring disclosure of a newspaper's confidential sources, including school-district employees who had provided information for an article containing allegedly defamatory statements about a high school football coach. *Weinberger*, 668 N.W.2d at 669-71, 675. The supreme court interpreted the "relevant evidence" portion of the statute to require an affirmative showing of relevance consistent with the standard in the Minnesota Rules of Evidence: evidence that has "'any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'" *Id.* at 673 (emphasis omitted) (quoting

12

Minn. R. Evid. 401); *see* Minn. Stat. § 595.025, subd. 1. The court also analyzed the probable-cause portion of the statute, defining "probable cause," in the civil context, as "a bona fide belief in the existence of the facts essential under the law for the action and such as would warrant a [person] of ordinary caution, prudence, and judgment, under the circumstances, in entertaining it." *Weinberger*, 668 N.W.2d at 674 (emphasis omitted) (quotation omitted); *see* Minn. Stat. § 595.025, subd. 2(a). The *Weinberger* court emphasized that it had not been asked to rule on the issue of a First Amendment journalists' privilege and that, to the extent that *Bauer* was inconsistent with its analysis, *Bauer* was overruled. *Weinberger*, 668 N.W.2d at 671 nn.4-5, 675 n.9. But it did not explicitly state which of the five factors identified in the *Bauer* balancing test remained intact. We note that both parties rely on some or all of the *Bauer* factors in analyzing whether McEnroe must disclose his confidential source.

Three years later, without reference to *Bauer*, the supreme court referred to a First Amendment journalist's privilege in an attorney-discipline case. *In re Charges of Unprofessional Conduct*, 720 N.W.2d at 815-17. The attorney, who had been charged by the Director of the Office of Lawyers Professional Responsibility with knowingly or recklessly making false statements about the integrity of a judge, argued that he had a qualified journalist's privilege not to disclose the sources who provided the information his statement was based on. *Id*. at 810-11, 815. The supreme court indicated that it was reluctant to articulate a new principle of constitutional law without adequate briefing, observing that the statutory privilege, which had not been asserted, was available to protect against compelled disclosure of sources. *Id*. at 818. But the supreme court also cited

13

*Branzburg* and noted that a majority of federal courts had held that a qualified journalist's privilege existed under the First Amendment. *Id*. at 816. It therefore "[a]ssum[ed], without deciding," that such a privilege existed and quoted *Cervantes*, stating that the party seeking disclosure would be required to make a "'concrete demonstration that the identity of [the applicable] news sources will lead to persuasive evidence on the issue of malice.'" *Id*. at 817 (quoting *Cervantes*, 464 F.2d at 994).

After examination of the act and its subsequent interpretation in *Bauer*, *Weinberger* and *In re Charges of Unprofessional Conduct*, we conclude that a party seeking disclosure of a journalist's confidential source must make an affirmative showing on the statutory requirements. *See* Minn. Stat. § 595.025; *Weinberger*, 668 N.W.2d at 673-75. That affirmative showing is called for by the act's requirements that the party *demonstrate* that the source's identity will lead to relevant evidence and establish *probable cause* to believe that the source has clearly relevant information. *See* Minn. Stat. § 595.025, subds. 1, 2; *Weinberger*, 668 N.W.2d at 674 (defining probable cause).

Although the statutory language and its interpretation in *Weinberger* make it clear that a party must make an affirmative showing, the parameters and scope of that showing evolved with *In re Charges of Unprofessional Conduct*. In that case, the supreme court concluded that the journalist's privilege had been overcome under the standard in *Cervantes*. *In re Charges of Unprofessional Conduct*, 720 N.W.2d at 817. Accordingly, in order to compel disclosure of a confidential source, a plaintiff must affirmatively show that disclosure of the source will lead to persuasive evidence on the elements of defamation. *Id.* Such a showing recognizes the journalist's First Amendment right to protect sources,

14

the plaintiff's interest in privacy, and the public interest in the fair administration of justice. *Torre*, 259 F.2d at 548-49. The showing is consistent with *Weinberger*'s focus on establishing both relevance and probable cause. In addressing the probable-cause section of the act, the supreme court stated that there must be a bona fide belief, as measured by "a [person] of ordinary caution, prudence and judgment" in the existence of the necessary facts. *Weinberger*, 668 N.W.2d at 674 (quotation omitted).

McEnroe argues that such a standard necessarily should go further and require the plaintiff to demonstrate a prima facie case of defamation in order to compel disclosure. We disagree. McEnroe's argument relies on this factor as set forth in caselaw from other jurisdictions recognizing a First Amendment reporter's privilege. *See, e.g.*, *Bruno & Stillman, Inc. v. Globe Newspaper Co.*, 633 N.W.2d 583, 597 (1st Cir. 1980) (stating that "plaintiff should show that it can establish jury issues on the essential element of its case not the subject of the contested discovery"). This court initially held in *Weinberger* that a prima facie case was required. *Weinberger v. Maplewood Review*, 648 N.W.2d 249, 256-57 (Minn. App. 2002), *rev'd*, 668 N.W.2d 667 (Minn. 2003). But the supreme court on review clearly stated that, for the statutory defamation exception to apply, a party need only establish that the identity of the source "will lead to relevant evidence on the issue of actual malice" and that probable cause exists "to believe that the source has information clearly relevant" to defamation. *Weinberger*, 668 N.W.2d at 673 (quotation omitted). We therefore decline to conclude that a prima facie case is required for disclosure.

Nonetheless, when examining whether a party has affirmatively shown that disclosure of the source will lead to persuasive evidence, we conclude that a district court

15

should objectively assess the proffered evidence. *See In re Charges of Unprofessional Conduct*, 720 N.W.2d at 817. This is consistent with the supreme court's more recent observations, *id.*, and with *Weinberger*'s interpretation of probable cause. *Weinberger*, 668 N.W.2d at 674. It is also consistent with longstanding Minnesota law governing establishment of civil probable cause: it requires the presentation of facts and circumstances demonstrating that the action is legal, proper, and just. *Id.*; *Nelson v. Int'l Harvester Co. of Am.*, 117 Minn. 298, 301, 135 N.W. 808, 810 (1912).

Finally, having the district court objectively assess the evidence reflects the act's stated concern with protecting the public interest and the free flow of information. Minn. Stat. § 595.022. It fulfills the legislature's public commitment to confer on journalists a "substantial privilege" not to reveal sources. *Id.*

## II. Range failed to demonstrate that disclosing the source's identity would lead to persuasive evidence.

To examine whether the evidence produced by Range met the standard for persuasive evidence on the defamation elements of falsity and malice, we briefly review those elements. Next we consider Range's evidence connecting the confidential source with persuasive evidence of falsity or malice. Based on this review we conclude that, under the standards of the act, Range has failed to show that disclosing the source's identity would lead to persuasive evidence on the issues of falsity and malice. *See* Minn. Stat. § 595.025. subds. 1, 2.[7]

---

[7] The parties do not contest that the third statutory requirement is met: that the source's information cannot be obtained by alternative means or by a remedy that is less destructive of First Amendment rights. *See id.*, subd. 3.

16

To succeed on its claim of defamation, Range is required to prove: (1) a false and defamatory statement about the plaintiff; (2) in an unprivileged publication to a third party; (3) that harmed the plaintiff's reputation in the community. *Weinberger*, 668 N.W.2d at 673. Falsity in a defamation action means that the alleged statement is not "substantially true," *McKee v. Laurion*, 825 N.W.2d 725, 730 (Minn. 2013). Minor inaccuracies of expression or detail are immaterial. *Air Wis. Airlines Corp. v. Hoeper*, 134 S. Ct. 852, 861 (2014).

In addition, because it is undisputed that Range is a limited-purpose public figure for purposes of this action, Range is required to prove by clear and convincing evidence that the alleged defamatory statements were made with actual malice. *N.Y. Times*, 376 U.S. at 279-80, 285-86, 84 S. Ct. at 726, 729; *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 336-37, 94 S. Ct. 2997, 3005 (1974). A statement is made with actual malice when it is made with the knowledge that it is false or with reckless disregard of whether it is false or not. *N.Y. Times*, 376 U.S. at 279-80, 84 S. Ct. at 726. "[R]eckless disregard" means that the defendant made the statement "while subjectively believing that the statement is probably false." *Chafoulias v. Peterson*, 668 N.W.2d 642, 655 (Minn. 2003) (quotation omitted).

Range points to two possible connections between the confidential source and relevant evidence of falsity or actual malice. First, Range argues that McEnroe's claim that all his information for the article came from the report was inconsistent with facts stated in the article. For example, the MDH report never stated that the resident was "unconscious" and "barely alive," as McEnroe reported. Rather, the MDH report stated

17

the resident "was found unresponsive." Range sought to learn where this "other information" came from and posited that it could have come from the confidential source. It was on this basis—that the news article "arguably deviate[s] significantly" from the report—that the district court ordered disclosure of the source. The second connection, argued on appeal, is that the source will be able to provide evidence about how the preliminary MDH report given to McEnroe differed from the public report released several days later.

We are not convinced that these justifications demonstrate that the identity of the source will lead to persuasive evidence of falsity or actual malice. With regard to the first argument, there is no evidence that McEnroe discussed anything of substance with the confidential source. McEnroe states that he relied only on the report and did not receive other oral information from the source who provided him with the report. We conclude that Range has provided only speculation that disclosing the identity of the source would lead to information relevant to proving or disproving the element of actual malice. *See* Minn. Stat. § 595.025, subd. 1 (stating required demonstration that the source's identity will lead to relevant evidence on actual malice). We agree with the district court that the arguable deviations between the news article and the MDH report may be relevant to proving actual malice.[8] But the argument that McEnroe's embellishment of the report, without additional information, is evidence of actual malice does not need verification from the source. McEnroe admitted exactly this evidence—that he based his article only on the

---

[8] We do not reach the issue of whether such a deviation is sufficient by itself to prove actual malice by clear and convincing evidence.

18

report and his research and general knowledge—not on additional information from the source.

Nor do we find persuasive the argument that the source could provide evidence on the difference between the draft report shared with McEnroe and the publicly released version. This argument also is based on conjecture. As counsel for Range clarified at oral argument, Range's claim is based on McEnroe's conversation with the source, not on any differences between the copy provided McEnroe and the report publicly released a few days later.

Range argues that *Weinberger* supports the district court order compelling disclosure. But *Weinberger* involved a situation in which certain named defendants were believed to be the sources of the alleged defamatory statements, so that the statutory requirements of relevance and probable cause were unquestionably met. *See* 668 N.W.2d at 674. In addition, following *Weinberger*, the supreme court recognized a showing of persuasive evidence on the elements of defamation as part of the district court's assessment in deciding whether to order disclosure. *In re Charges of Unprofessional Conduct*, 720 N.W.2d at 817.

Finally, Range argues that, short of ordering disclosure of the source, we are letting McEnroe simply say "you just have to trust me on that" with regard to important issues in the case. But the act puts the burden on Range, not McEnroe, to demonstrate that the source has relevant information and to establish probable cause that this information is clearly relevant to falsity or actual malice. Minn. Stat. § 595.025, subds. 1, 2(a). While this

19

demonstration need not rise to the level of establishing a prima facie case,[9] it does require an affirmative showing. And the burden of that showing falls on Range, not McEnroe.

Range has not made the affirmative showing required to merit an exception to the act's general rule that a court may not require a reporter to disclose confidential sources. *See* Minn. Stat. § 595.023 (2014) (stating that general rule). It has neither demonstrated that the source's identity will lead to relevant evidence nor established probable cause that the source has information clearly relevant to the issues of defamation. Both showings require concrete evidence that discovery of the source will lead to persuasive evidence. And while McEnroe may have embellished the report in this article, because there has been no showing that the source supplied him with information other than the report, there has been no demonstration that learning the source's identity would lead to persuasive evidence on the issues of falsity or malice.

We conclude that the district court erred by determining that the requirements of Minnesota Statutes section 595.025 were met and by ordering disclosure of McEnroe's confidential source. Because we have concluded that the district court erred by ordering disclosure, we need not address McEnroe's alternative argument that the district court

---

[9] Range argues that, in fact, it did establish a prima facie case based on the subsequent summary-judgment decision on the three phrases and that this issue in the case is moot. We disagree. A matter may be dismissed as moot when "an event occurs that makes a decision on the merits unnecessary or an award of effective relief impossible." *Limmer v. Swanson*, 806 N.W.2d 838, 839 (Minn. 2011) (quotation omitted). Although the district court denied summary judgment on Range's defamation claim, McEnroe is entitled to review of the district court's decision to compel disclosure of his confidential source, and a favorable outcome would provide him with effective relief. The district court's subsequent summary-judgment decision does not moot the issue of whether the district court correctly applied the act to compel disclosure.

20

improperly fashioned its discovery order to allow opposing counsel to view the identity of the source.

## D E C I S I O N

The statutory requirements of relevance and probable cause under the defamation exception to the Minnesota Free Flow of Information Act require the district court to consider whether the plaintiff has shown that disclosure of the reporter's confidential source would lead to persuasive evidence on the issues of falsity and malice. Because the district court erred by concluding that the statutory standards for disclosure were met, we reverse the district court's order requiring disclosure of McEnroe's confidential source.

**Reversed.**